935 F.2d 501
 67 A.F.T.R.2d 91-1166, 60 USLW 2001, 91-2
USTC P 50,315,
33 Fed. R. Evid. Serv. 14
 UNITED STATES of America, Petitioner-Appellee,
v.
GOLDBERGER & DUBIN, P.C., Paul A. Goldberger, Lawrence A.
Dubin, Fischetti, Pomerantz & Russo, Ronald P.
Fischetti and Mark F. Pomerantz,
Respondents-Appellants,
John Doe # 1 and John Doe # 2, Intervenors-Appellants.
 Nos. 676, 677, Dockets 90-6155, 90-6205.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 11, 1990.
Decided June 7, 1991.
 
 Kay K. Gardiner, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y. and Marla Alhadeff, Asst. U.S. Atty., of counsel), for petitioner-appellee.
 Mark F. Pomerantz, New York City (Robert Penchina, Rogers & Wells, New York City, of counsel), for respondents-appellants Fischetti, Pomerantz & Russo, Ronald P. Fischetti, and Mark F. Pomerantz; and intervenors-appellants John Doe # 1 and John Doe # 2.
 J. Jeffrey Weisenfeld, New York City (Goldberger & Dubin, P.C., New York City, of counsel), for respondents-appellants Goldberger & Dubin, P.C., Paul A. Goldberger, and Lawrence A. Dubin.
 Daniel J. Popeo and Paul D. Kamenar, Washington, D.C., submitted a brief for Washington Legal Foundation, amicus curiae.
 Ronald E. DePetris and Marion Bachrach, New York City, submitted a brief for New York Council of Defense Lawyers, amicus curiae.
 Michael S. Ross, New York City, submitted a brief for Committee on Criminal Advocacy, The Ass'n of the Bar of the City of New York, amicus curiae. Gerald B. Lefcourt, P.C., Sheryl E. Reich, New York City, and Neal R. Sonnett, Sonnett Sale & Kuehne, P.C., Miami, Fla., for Nat. Ass'n of Criminal Defense Lawyers, Jack Litman, New York City, for New York State Ass'n of Criminal Defense Lawyers, Jack Hoffinger, New York City, for New York Criminal Bar Ass'n, Arthur Eisenberg, New York City, for New York Civil Liberties Union, and Max D. Stern, Boston, Mass., for Nat. Network for the Right to Counsel, submitted a joint brief amici curiae.
 John J. Curtin, Jr., Chicago, Ill., Michael S. Ross, Steven H. Goldblatt and Antonia B. Ianniello, New York City, submitted a brief for American Bar Ass'n, amicus curiae.
 Before VAN GRAAFEILAND and WALKER, Circuit Judges and DEARIE, District Judge.*
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Attorneys Ronald P. Fischetti, Mark F. Pomerantz, Paul A. Goldberger, Lawrence A. Dubin, the law firms of Fischetti, Pomerantz & Russo and Goldberger & Dubin, P.C., and intervenors John Doe No. 1 and John Doe No. 2 appeal from orders of the United States District Court for the Southern District of New York (Broderick, J.) requiring the attorneys and their firms to provide the Internal Revenue Service, pursuant to 26 U.S.C. Sec. 6050-I,[1] with the names of clients who paid them cash fees in excess of $10,000. We affirm.
 
 
 2
 Internal Revenue Code section 6050-I requires "[a]ny person ... engaged in a trade or business, and who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions)" to file a return specified as Form 8300. When completed, a Form 8300 contains the cash payor's name and other identifying information. During 1986 and 1987, Fischetti, Pomerantz & Russo received cash fees in excess of $10,000 from two individuals identified in this proceeding as John Doe No. 1 and John Doe No. 2. Both payors retained the Fischetti firm to represent them in connection with criminal indictments; both were advised of section 6050-I's reporting requirements, and both requested their attorneys not to disclose their identities as payors. Goldberger and Dubin, P.C. similarly received cash fees in excess of $10,000 from, or on behalf of, each of three individuals, but none of these three has intervened.
 
 
 3
 Respondents filed a Form 8300 disclosing the cash fee payment in each case but did not identify the payor. Following an unproductive exchange of correspondence with respondents, the IRS issued summonses directing them to appear and produce information identifying the payors. Upon respondents' refusal to comply, the government petitioned the district court for enforcement of the summonses. John Doe No. 1 and John Doe No. 2 were granted leave to intervene in the summons enforcement proceedings. In a bench ruling after oral argument, the district court held that respondents must comply with the IRS summonses and provide the payor information.
 
 
 4
 Financial-reporting legislation plays an important role in the economic life of our country. See California Bankers Ass'n v. Shultz, 416 U.S. 21, 45-49, 94 S.Ct. 1494, 1509-10, 39 L.Ed.2d 812 (1974); 47B C.J.S. Internal Revenue Secs. 1042-1043. Prominent among statutes of this nature are those that require reports of substantial currency transactions. See, e.g., the Bank Secrecy or Currency and Foreign Transactions Reporting Act of 1970 (the Bank Secrecy Act), Pub.L. No. 91-508, 84 Stat. 1114 (codified as amended and revised at 31 U.S.C. Secs. 5311-5326) and the Trading with the Enemy Act, 40 Stat. 411 (1917) (codified as amended at 50 U.S.C.A.App. Sec. 5, at 49 (1990)), both of which have survived constitutional challenges. See California Bankers, supra, 416 U.S. at 77, 94 S.Ct. at 1525; United States v. Yoshida Int'l, Inc., 526 F.2d 560, 573 n. 16, 63 CCPA 15 (1975).
 
 
 5
 The record-keeping and reporting provisions of the Bank Secrecy Act were based upon congressional findings that they "have a high degree of usefulness in criminal, tax, and regulatory investigations or proceedings." See Secs. 121, 123, 202 of the original act, 84 Stat. at 1116, 1118; see also Sec. 5311 of the 1982 revision of the act, Pub.L. No. 97-258, 96 Stat. 877, 995 (codified at 31 U.S.C. Sec. 5311).
 
 
 6
 Congress incorporated section 6050-I(a) in the Tax Reform Act of 1984, Pub.L. No. 98-369, 98 Stat. 494, in an additional effort to unearth the "underground economy" (13 Mertens, Law of Federal Income Taxation Sec. 48.50). In section 6050-I(a)(1), Congress expanded the reporting requirements for cash transactions in excess of $10,000 to apply to "[a]ny person who is engaged in a trade or business." Extensive lobbying efforts to exempt attorneys from the reach of this amendment were unsuccessful. Appellants now seek to secure from the judiciary what their lobbyists were unable to get from Congress.
 
 
 7
 Appellants' allegations of unconstitutionality merit only brief discussion. Their contentions relative to the Fourth and Fifth Amendments have been rejected consistently in cases under the Bank Secrecy Act by both the Supreme Court and this court. See United States v. Miller, 425 U.S. 435, 444, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976); California Bankers, supra, 416 U.S. at 44-75, 94 S.Ct. at 1509-24; United States v. Mickens, 926 F.2d 1323, 1330-32 (2d Cir.1991); United States v. Dichne, 612 F.2d 632, 638-41 (2d Cir.1979), cert. denied, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 760 (1980); see also Couch v. United States, 409 U.S. 322, 327-28, 93 S.Ct. 611, 615-16, 34 L.Ed.2d 548 (1973); Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 472-73 n. 3 (3d Cir.1979). The reporting requirements of the 1984 Tax Reform Act, like those of the Bank Secrecy Act, target transactions without regard to the purposes underlying them and do not require reporting of information that necessarily would be criminal. See United States v. Mickens, supra, 926 F.2d at 1331.
 
 
 8
 Respondents' principal constitutional argument, that section 6050-I deprives them of their Sixth Amendment right to counsel, is equally without merit. On several occasions in recent years the Supreme Court has elaborated on the essential meaning of the Sixth Amendment right to counsel. The Court succinctly summarized these holdings in Wheat v. United States, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), where it said:We have further recognized that the purpose of providing assistance of counsel "is simply to ensure that criminal defendants receive a fair trial," Strickland v. Washington, 466 U.S. 668, 689 [104 S.Ct. 2052, 2065, 80 L.Ed.2d 674] (1984), and that in evaluating Sixth Amendment claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." United States v. Cronic, 466 U.S. 648, 657, n. 21 [104 S.Ct. 2039, 2046, n. 21, 80 L.Ed.2d 657] (1984). Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. See Morris v. Slappy, 461 U.S. 1, 13-14 [103 S.Ct. 1610, 1617-18, 75 L.Ed.2d 610] (1983); Jones v. Barnes, 463 U.S. 745 [103 S.Ct. 3308, 77 L.Ed.2d 987] (1983).
 
 
 9
 Section 6050-I stops far short of the forfeiture statutes that were at issue in Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) and United States v. Monsanto, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), in which the preclusion of the defendants from using seized assets to pay their attorneys was held not to violate the Sixth Amendment. Section 6050-I does not preclude would-be clients from using their own funds to hire whomever they choose. To avoid disclosure under section 6050-I, they need only pay counsel in some other manner than with cash. The choice is theirs. None of the appellants has advanced a legitimate reason why payment other than in cash cannot be made. Statements such as "[s]ome clients may not have non-cash assets" are somewhat less than persuasive. Equally unpersuasive is the argument that a would-be client might elect to take his business to an unscrupulous lawyer who would ignore the reporting requirements of section 6050-I. Although the unscrupulous lawyer might not be the client's first choice, the Sixth Amendment does not guarantee the client the right to his first choice. See In re Grand Jury Subpoena Served Upon John Doe, 781 F.2d 238, 250-51 (2d Cir.1985) (en banc), cert. denied, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). In Morris v. Slappy, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 1617-18, 75 L.Ed.2d 610 (1983), the Court rejected the claim that the Sixth Amendment guarantees a "meaningful relationship between an accused and his counsel."
 
 
 10
 In sum, we hold that section 6050-I passes constitutional muster.
 
 
 11
 Appellants' contention that section 6050-I conflicts with the traditional doctrine of attorney-client privilege also is without merit. Certain general principles, hereafter discussed, are applicable to that doctrine. The doctrine protects only those disclosures that are necessary to obtain informed legal advice and that would not be made without the privilege. Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); In re Grand Jury Subpoena Served Upon Simon Horowitz, 482 F.2d 72, 81-82 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). The privilege cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose. In re Grand Jury Subpoena Duces Tecum Served Upon Gerald L. Shargel, 742 F.2d 61, 62 (2d Cir.1984); In re Horowitz, supra, 482 F.2d at 81-82; VIII Wigmore on Evidence Sec. 2192, at 67 (3d ed.). Advice given in connection with an ongoing or proposed illegality or fraud does not qualify for the privilege. Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); In re Grand Jury Subpoena Served Upon David Doe, 551 F.2d 899, 900-01 (2d Cir.1977); United States v. Bob, 106 F.2d 37, 40 (2d Cir.), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939). The privilege against disclosure belongs to the client, not to the attorney. Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir.1967); In re Grand Jury Investigation of Ocean Transp., 604 F.2d 672, 675 (D.C.Cir.), cert. denied, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); VIII Wigmore, supra, Sec. 2321, at 625.
 
 
 12
 Application of the foregoing principles in the instant case makes it clear that, absent special circumstances, concerning which there is no evidence whatever herein, the identification in Form 8300 of respondents' clients who make substantial cash fee payments is not a disclosure of privileged information. See In re Two Grand Jury Subpoenae Duces Tecum Dated August 21, 1985, 793 F.2d 69, 71-72 (2d Cir.1986); In re John Doe, supra, 781 F.2d at 248; In re Shargel, supra, 742 F.2d at 63. In both John Doe, supra, 781 F.2d at 248 and Shargel, supra, 742 F.2d at 63, 64 n. 6, we held that the disclosure of fee information and client identity is not privileged even though it might incriminate the client. That asserted possibility does not constitute a "special circumstance" warranting a claim of privilege. This case readily is distinguishable from cases such as Marchetti v. United States, 390 U.S. 39, 48-49, 88 S.Ct. 697, 702-03, 19 L.Ed.2d 889 (1968) (the gambler's registration case), in which the "direct and unmistakable consequence" of the disclosure requirements was the incrimination of the person making the disclosure. No such "direct linkage" is apparent in section 6050-I. See Dichne, supra, 612 F.2d at 638-41.
 
 
 13
 When members of the Fischetti firm returned the incomplete 8300 Forms to the IRS, they included notes indicating that disclosure of the client information "would violate NYCPLR Sec. 4503" which codifies the attorney-client privilege law of New York. They erred twice in so doing. In the first place, in actions such as the instant one, which involve violations of federal law, it is the federal common law of privilege that applies. United States v. Sykes, 697 F.2d 87, 89 n. 1 (2d Cir.1983); Gannet v. First Nat'l State Bank of New Jersey, 546 F.2d 1072, 1076 (3d Cir.1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). Secondly, even if New York State law were to be applied, a communication to an attorney would not be considered confidential unless it was made in the process of obtaining legal advice; and fee arrangements between attorney and client do not satisfy this requirement in the usual case. Matter of Priest v. Hennessy, 51 N.Y.2d 62, 69, 431 N.Y.S.2d 511, 409 N.E.2d 983 (1980); see also Hoopes v. Carota, 74 N.Y.2d 716, 717, 544 N.Y.S.2d 808, 543 N.E.2d 73 (1989). Moreover, said the Priest court, "even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure." Priest, supra, 51 N.Y.2d at 69, 431 N.Y.S.2d 511, 409 N.E.2d 983. That surely should be the case where, as here, the attorney-client privilege doctrine collides head on with a federal statute that implicitly precludes its application. See Caplin & Drysdale, supra, 491 U.S. at 633 n. 10, 109 S.Ct. at 2656 n. 10.
 
 
 14
 The importance of client identification as a means of uncovering tax evasion is apparent from the briefs of appellants' amici, which state that "the wholesale enforcement of attorney 8300 Forms would require thousands of attorneys each year to provide client-information to the government" (Association of the Bar of the City of New York Committee on Criminal Advocacy at 7) and "threatens profoundly to affect the adversarial system of justice in the United States" (American Bar Association at 6). In its "General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984," the Staff of the Joint Committee on Taxation, 98th Cong., 2d Sess., stated:
 
 
 15
 Congress was concerned that approximately 80 percent of the revenue lost through noncompliance is attributable to the underreporting of income. For 1981, the Internal Revenue Service estimated that taxpayers filing returns failed to report $134 billion of income and nonfilers failed to report $115 billion. The $250 billion of underreporting reduced tax receipts by an estimated $55 billion. Unreported income connected with illegal activities was estimated to result in an additional $9 billion of lost revenue. Congress believed that reporting on the spending of large amounts of cash would enable the Internal Revenue Service to identify taxpayers with large cash incomes.
 
 
 16
 Id. at 491.
 
 
 17
 The words of a statute should be given their normal meaning and effect in the absence of a showing that some other meaning was intended. United States v. Ruffin, 613 F.2d 408, 415 (2d Cir.1979). The practice of law is treated as a "trade or business" under both the income tax laws, 6 Mertens, Law of Federal Income Taxation Sec. 25.123, and the Sherman Act, Goldfarb v. Virginia State Bar, 421 U.S. 773, 786-88, 95 S.Ct. 2004, 2012-14, 44 L.Ed.2d 572 (1975). There is no indication that Congress intended those words to be interpreted any differently in section 6050-I. Indeed, Congress's rejection of the lobbying efforts to secure a specific exclusion of the legal profession from this customary definition is strong evidence that Congress did not wish to do so. The clear and unmistakable intent of Congress in enacting the currency reporting statutes was to enable the IRS to identify taxpayers with large cash incomes. To the extent that the congressional intent, as expressed in section 6050-I, conflicts with the attorney-client privilege, the latter must give way to the former.
 
 
 18
 Because attorneys are not excepted by the Constitution from complying with section 6050-I, they are subject to the civil and criminal penalties designed to induce such compliance. Although sections 6721-6724 of the Internal Revenue Code, 26 U.S.C. Secs. 6721-6724, provide specific penalties for failure to comply with information-reporting requirements of the code, such penalties are not necessarily exclusive. See United States v. Woodward, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); United States v. Batchelder, 442 U.S. 114, 122-26, 99 S.Ct. 2198, 2203-05, 60 L.Ed.2d 755 (1979); United States v. Grotke, 702 F.2d 49, 54 (2d Cir.1983). Section 1001 of Title 18 of the United States Code, the purpose of which is to protect the government from fraud and deceit regardless of whether it results in monetary loss, United States v. Bramblett, 348 U.S. 503, 507 n. 4, 75 S.Ct. 504, 507 n. 4, 99 L.Ed. 594 (1955), makes it unlawful for anyone to knowingly and willfully conceal or cover up a material fact in any matter within the jurisdiction of any department or agency of the United States. It has been applied, together with 18 U.S.C. Sec. 371 (conspiracy to defraud the United States) and 18 U.S.C. Sec. 2(b) (aiding and abetting), to both bank officers and depositors who cause the bank to violate the reporting requirements of the Bank Secrecy Act. See United States v. Nersesian, 824 F.2d 1294, 1309-13 (2d Cir.), cert. denied, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987); United States v. Richeson, 825 F.2d 17, 20 (4th Cir.1987); United States v. Tobon-Builes, 706 F.2d 1092, 1099-1100 (11th Cir.1983).
 
 
 19
 The frauds against the government prohibited by these sections are not restricted to fraud, as that term has been used in the common law. Dennis v. United States, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966). Assuming that the necessary elements of knowledge and willfulness are found to exist, there is no reason why sections 371, 2(b), and 1001 should not be applied to attorneys and their clients. In short, "in the absence of allegations as to special circumstances--we see no reason why an attorney should be any less subject to questioning about fees received from a taxpayer than should any other person who has dealt with the taxpayer." Colton v. United States, 306 F.2d 633, 637-38 (2d Cir.1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).
 
 
 20
 In the instant case, as in most cases, the moving force behind nondisclosure is the client, not the lawyer. Indeed, it is the lawyer's duty to counsel against such wrongful nondisclosure, not to encourage it. See Nix v. Whiteside, 475 U.S. 157, 166-71, 106 S.Ct. 988, 994-96, 89 L.Ed.2d 123 (1986). A client, for whose benefit the attorney-client privilege exists, should not be permitted to claim the privilege, either directly or through his attorney, for the purpose of concealing his own ongoing or contemplated fraud. See United States v. Rosenstein, 474 F.2d 705, 715 (2d Cir.1973); In re Special September 1978 Grand Jury, 640 F.2d 49, 62-63 (7th Cir.1980).
 
 
 21
 The IRS summons authority conferred by 26 U.S.C. Sec. 7602 is not for the purpose of accusing but of inquiring. United States v. Arthur Young & Co., 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984) (quoting United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975)). The government was not required to comply with the self-imposed procedural safeguards governing the issuance of subpoenas to attorneys in grand jury proceedings. See Holifield v. United States, 909 F.2d 201, 205 (7th Cir.1990). The subpoena power was exercised properly in the instant case.
 
 
 22
 Affirmed.
 
 
 
 *
 United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 The official section number is 6050I. However, because this has the appearance of a 5-digit number, we have inserted a hyphen to avoid confusing those readers who are otherwise unfamiliar with the section