**UNITED STATES OF AMERICA,**
**Plaintiff–Appellant,**

v.

**ROBERT A. LEVENTHAL, personally and in his representative capacity as partner/officer of Leventhal & Slaughter, P.A., Defendant–Appellee.**

No. 91–3541
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 27, 1992.

Richard L. Thornburgh, U.S. Atty. Gen., U.S. Dept. of Justice, Gary R. Allen, Chief, John A. Dudeck, Jr., James A. Bruton, Charles Brookhart, Appellate Section, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff-appellant.

Manuel Socias, Orlando, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, HATCHETT and DUBINA, Circuit Judges.

PER CURIAM:

The Government appeals from an order of the United States District Court for the Middle District of Florida instructing Robert A. Leventhal, an attorney, to provide the Internal Revenue Service (IRS) with some, but not all, of the information specified in an IRS summons. The IRS had issued the summons to obtain certain information necessary for the completion and verification of two disclosure documents, or Forms 8300, filed by Leventhal. We vacate the district court's order and remand

---

**1.** This appeal involves Robert A. Leventhal in two capacities: personally and as a partner-

the case with the instruction to enter an order enforcing the IRS summons *in toto*.

## I.

On two occasions, Leventhal,[1] an attorney practicing in Orlando, Florida, filed a Form 8300 without providing all of the information required on the face of the form. The IRS promulgated Form 8300 pursuant to 26 U.S.C. § 6050I (1988), which provides in pertinent part:

(a) Cash receipts of more than $10,000

Any person—

(1) who is engaged in a trade or business, and

(2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction ...,

shall make the return described in subsection (b) with respect to such transaction ... at such time as ... [IRS] regulations prescribe.

(b) Form and manner of returns

A return is described in this subsection if such return—

(1) is in such form as the [IRS] may prescribe,

(2) contains—

(A) the name, address, and [social security number or tax identification number] of the person from whom the cash was received,

(B) the amount of the cash received,

(C) the date and nature of the transaction, and

(D) such other information as the [IRS] may prescribe.

26 U.S.C. § 6050I (1988).

Form 8300 is divided into three Parts. Part I requires disclosure of information identifying the individual from whom the cash payment was received. Part II requires disclosure, if applicable, of facts identifying an agent conducting the cash

officer of Leventhal & Slaughter, P.A. For sim-

transaction on behalf of the individual identified in Part I.[2] Part III requires disclosure of the nature of the transaction.[3]

On May 13, 1988, Leventhal filed a Form 8300 listing a cash receipt of $20,000 on April 5, 1988. On May 5, 1989, Leventhal filed a second Form 8300 listing a cash receipt of $10,000 on April 14, 1989. Neither form, however, disclosed the information required in Parts I and II. In Part III of the first Form 8300, Leventhal provided the following information:

> Monies received for privileged legal advice rendered to clients for clients' past activities. Clients are currently under indictment for violation of [21 U.S.C. § 846 (1988)]. Revealing the information called for in Parts I and II of this

form is likely to result in a violation of the attorney/client privilege.[4]

In Part III of the second Form 8300, Leventhal recited the same paragraph, except that this time around he referred to an indictment under Fla.Stat. ch. 893.-135(1)(b)3. (1989) rather than under 21 U.S.C. § 846.[5]

On April 18, 1990, IRS Agent Victoria Bessent served a summons on Leventhal, calling for production of documents necessary to complete and substantiate the two Forms 8300.[6] In a letter dated April 26, 1990, Leventhal stated that he would not comply with the IRS summons. On January 31, 1991, the Government filed a petition to enforce the summons in the United States District Court for the Middle District of Florida.

---

plicity, we refer to him in both capacities as Leventhal.

2. Parts I and II require the recipient of the cash payment to disclose all of the following facts, where applicable, pertaining to both the individual from whom the cash is received and the individual's agent: the individual's full name, social security number, passport number and country of issuance, and alien registration number; the organization with which the individual is affiliated; the organization's employer identification number; the organization's business or occupation; and an address for either the individual or organization.

3. Part III lists the following options for describing the nature of the transaction: personal property purchased, real property purchased, personal services provided, business services provided, intangible property purchased, debt obligation paid, exchange of cash, escrow of trust funds, or other (specify).

4. 21 U.S.C. § 846 (1988) states:

> Any person who attempts or conspires to commit any offense defined in this subchapter [Drug Abuse Prevention and Control— Control and Enforcement] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

5. Fla.Stat. ch. 893.135(1)(b)3. stated:

> (b) Any person who knowingly sells, purchases, manufactures, delivers, or brings into [Florida], or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine as described in s. 893.03(2)(a)4. or of any mixture containing cocaine is guilty of a felony of the first degree, which felony shall

be known as "trafficking in cocaine." If the quantity involved:

> . . . .

> 3. Is 400 grams or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and to pay a fine of $250,000.

Fla.Stat. ch. 893.135(1)(b)3. (1989) (current version at Fla.Stat. ch. 893.135(1)(b)1.c. (Supp. 1990)).

6. The summons directed Leventhal to appear at an April 30, 1990 hearing, at which he was to produce the following:

> The unredacted, unaltered, originals of all records relating to or associated with the ... Forms 8300 filed by you, including but not limited to accounting records, cash receipts journals, bank records, escrow account records, payment records, contracts, which contain the following information *necessary to complete the [disputed] Forms 8300:*

> 1. The complete names, addresses, business or occupations and social security or taxpayer identification numbers of any and all clients (whether individuals and/or organizations) for whom the transactions reported were completed.

> 2. The complete names, addresses and taxpayer identification numbers of any and all individuals conducting the reported transactions, if different from the information in item number 1.

> 3. The passport numbers and countries of origin and/or alien registration numbers and countries of origin for all foreign individuals or organizations who conducted the transactions or for whom the transactions were completed.

> 4. Any other identifying data for the individuals or organizations who conducted the transactions or for whom the transactions were conducted.

On February 4, 1991, the district court issued an order directing Leventhal to show cause why the summons should not be enforced. In response, Leventhal contended that the information requested in the IRS summons "is protected by the attorney/client privilege"[7] and that "due to ethical constraints articulated by The Florida Bar, he could not comply with the summons *absent a court order directing such compliance.*" (Emphasis in original.) Leventhal attached to his response three ethics opinions by The Florida Bar.[8]

On March 12, 1991, the district court issued an order directing Leventhal to provide only the names of the parties making the cash payments listed in the two Forms 8300. The court did not explain why Leventhal was not required to release the rest of the information requested in the IRS summons, including, *inter alia,* addresses, social security numbers, and descriptions of the transactions. Moreover, the court found that Leventhal properly declined to provide the information absent a court order.

On March 26, 1991, the Government moved the district court to amend its order in two respects. In its motion, the Government sought full enforcement of the summons and requested that the court delete from its prior order the statement condoning Leventhal's refusal to comply with the summons absent a court order. The dis-

trict court denied the motion, and the Government appealed.

## II.

On appeal, the Government contends that it was entitled to enforcement of the summons *in toto* because it met the four-prong test for judicial enforcement of a government summons as set forth in *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). We agree.

In *Powell,* the Supreme Court stated that, in order to obtain judicial enforcement of a summons, the IRS must show (1) "that the investigation will be conducted pursuant to a legitimate purpose," (2) "that the inquiry may be relevant to [that] purpose," (3) "that the information sought is not already within the [IRS'] possession," and (4) "that the administrative steps required by the [Internal Revenue] Code have been followed." *Id.* In applying the *Powell* test, we have held that

> [t]he IRS can satisfy [its] burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts[;] the burden [then] shifts to the party contesting the summons to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of

---

7. The Florida Rules of Professional Conduct are contained in chapter 4 of the Rules Regulating The Florida Bar. Rule 4–1.6, entitled "Confidentiality of Information," states:

   (a) A lawyer shall not reveal information relating to representation of a client except as stated in paragraphs (b), (c), and (d) unless the client consents after disclosure to the client.

   (b) A lawyer shall reveal such information to the extent the lawyer believes necessary:

   (1) To prevent a client from committing a crime; or

   (2) To prevent a death or substantial bodily harm to another.

   (c) A lawyer may reveal such information to the extent the lawyer believes necessary:

   (1) To serve the client's interest unless it is information the client specifically requires not to be disclosed;

   (2) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client;

   (3) To establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved;

   (4) To respond to allegations in any proceeding concerning the lawyer's representation of the client; or

   (5) To comply with the Rules of Professional Conduct [of the Florida Bar].

   (d) When required by a tribunal to reveal such information, a lawyer may first exhaust all appellate remedies.

8. According to Leventhal, ethical rules required that he maintain his clients' confidentiality "absent consent of the affected clients" or "a court order requiring disclosure." He stated in his response to the show cause order that he attempted to obtain the consent of both clients. One of the clients was dead, however, and the other could not be reached.

the summons would constitute an abuse of the court's process.

*La Mura v. United States,* 765 F.2d 974, 979 (11th Cir.1985) (citations omitted); *see also Liberty Financial Services v. United States,* 778 F.2d 1390, 1392 (9th Cir.1985). The burden on the contesting party is "a heavy one," *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440, 1444 (10th Cir.1985), requiring allegation of specific facts and introduction of evidence. *Liberty Financial,* 778 F.2d at 1392; *United States v. Samuels, Kramer & Co.,* 712 F.2d 1342, 1347–48 (9th Cir. 1983).

In the case before us, the IRS attached to its enforcement petition the affidavit of Agent Bessent, who attested to the IRS' compliance with all four elements of the *Powell* test. In his response, Leventhal alleged that disclosure of information about his clients would violate The Florida Bar's Rules of Professional Conduct by revealing confidential information protected under the attorney-client privilege.[9]

The Florida Bar's Rules of Professional Conduct, however, do not prohibit Leventhal from disclosing the information specified in the IRS summons. Leventhal therefore failed to carry his burden of proving that the summons should not be enforced. In a similar case involving a law firm, the Second Circuit recently held that, absent extraordinary circumstances, the attorney-client privilege under New York law did not preclude disclosure of information on an IRS Form 8300. *See United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501 (2d Cir.1991). In *Goldberger,* the court first explained that "in actions such as the instant one, which involve violations of federal law, it is the *federal* common law of privilege that applies." *Id.* at 505 (citations omitted) (emphasis added). The court further pointed out that, even if the state law of privilege should apply, "a communication to an attorney would not be considered confidential unless it was made in the process of obtaining legal advice; and fee arrangements between attorney and client do not satisfy this requirement in the usual case." *Id.* (citations omitted). Finally, the *Goldberger* court noted that, even if a conversation concerning fees technically might fall within the scope of the attorney-client privilege, the privilege would yield in the face of "a federal statute that implicitly precludes its application." *Id.* The court identified section 6050I as just such a federal statute, remarking that Congress, in enacting section 6050I, had rejected lobbying efforts to exclude the legal profession from that section's reporting requirements. *Id.* at 506.

▮ We find the Second Circuit's reasoning in *Goldberger* persuasive. We have held on numerous occasions that "[t]he identity of a client or matters involving the receipt of fees from a client are not normally within the [attorney-client] privilege." *In re Grand Jury Proceedings (David R. Damore),* 689 F.2d 1351, 1352 (11th Cir. 1982); *see also In re Grand Jury Proceedings 88–9 (MIA),* 899 F.2d 1039, 1042 (11th Cir.1990) (same); *In re Grand Jury Investigation (Bruce Harvey),* 769 F.2d 1485, 1487 (11th Cir.1985) (same). We have recognized, however, a narrow exception to this general rule where disclosure of nonprivileged attorney-client communication also would reveal privileged information. *In re Grand Jury Proceedings 88–9 (MIA),* 899 F.2d at 1042–43. This exception, known as the "last link" doctrine, "[i]n essence ... extends the protection of the attorney-client privilege to nonprivileged information," thereby protecting other attorney-client communications that are privileged where "the incriminating nature of the privileged communications has created in the client a reasonable expectation that the information would be kept confidential."[10] *Id.* at 1043 (quoting *Rabin v. United States,* 896 F.2d 1267, 1273 (11th Cir.), *vacated* 896 F.2d 1283, *dismissed on other grounds,* 904 F.2d 1498 (1990)).

---

**9.** *See supra* note 7.

**10.** Modern expansion of the crime-fraud exception, however, threatens the continued vitality of the last link doctrine. *See Rabin v. United States,* 896 F.2d 1267, 1279 (11th Cir.) (Tjoflat, C.J., concurring), *vacated* 896 F.2d 1283, *dismissed on other grounds,* 904 F.2d 1498 (1990).

The last link doctrine, however, is inapposite in the present case. By Leventhal's own admission, the clients involved in the two cash transactions were already under indictment for the drug-related offenses cited in Part III of the two Forms 8300.[11] Consequently, the respective prosecutors—the United States Attorney and the Florida state attorney—were aware of the clients' identities. Moreover, the mere fact that Leventhal's clients had sought his legal assistance obviously does not constitute an admission of guilt, which arguably would have created an expectation of confidentiality. Disclosure of the clients' identities under Parts I or II of Form 8300, therefore, would not have revealed any privileged information.[12]

Likewise, disclosure of the nature of the transactions under Part III would not have thwarted a reasonable expectation of confidentiality on the part of Leventhal's clients. As the Second Circuit noted in *Goldberger*, "Section [6050I] does not preclude would-be clients from using their own funds to hire whomever they choose. To avoid disclosure under section [6050I], they need only pay counsel in some other manner than with cash. The choice is theirs." *Goldberger*, 935 F.2d at 504.

For the reasons stated above, we VACATE the district court's order and REMAND this case with the instruction that the district court enter an order enforcing the IRS summons *in toto*.[13]

IT IS SO ORDERED.

---

11. *See supra* notes 3–5 and accompanying text.

12. *See United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975) ("The purpose of [the IRS's summons power] is not to accuse, but to inquire.").

13. Our conclusion that Leventhal was not in any danger of violating the attorney-client privilege should leave no doubt that we disagree with the district court's approval of Leventhal's refusal to comply with the IRS summons absent a court order.