UNITED STATES of America, Petitioner,

v.

**FOND DU LAC RESERVATION BUSINESS COMMITTEE,**
Respondent.

**Misc. No. 5–94–7.**

United States District Court,
D. Minnesota,
Fifth Division.

Nov. 1, 1995.

John A. Marrella, U.S. Dept. of Justice, Tax Division, Washington, DC, for petitioner.

Henry M. Buffalo, Jr., Jacobson, Buffalo, Schoessler and Magnuson, Minneapolis, MN, Dennis J. Peterson, Fond du Lac Band of Lake Superior Chippewa, Cloquet, MN, for respondent.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court on defendant's objection to the September 11, 1995, Report and Recommendation issued by the Honorable Raymond L. Erickson, United States Magistrate Judge. The Magistrate considered a petition to enforce an Internal Revenue Service Summons, pursuant to 26 U.S.C. § 7603. The defendant moved to dismiss this administrative summons.

After a hearing and consideration of supplemental briefs, the Magistrate recommended that defendant's motion to dismiss be denied, and that the District Court issue an Order compelling compliance with the administrative summons, pursuant to 26 U.S.C. § 7604(b). Defendant timely filed its objection to the Report, pursuant to Local Rule 72.1(c)(2).

Based upon a *de novo* review of the record herein, the Court adopts the Magistrate's Report and Recommendation, save and except the first three sentences on page 528–529 and footnote 4, which the Court declines

to adopt. Accordingly, IT IS ORDERED that:

1. The September 11, 1995, Report is adopted as modified.

2. Defendant's motion to dismiss is denied.

3. Defendant is directed to comply with the administrative summons.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

At Duluth, in the District of Minnesota, this 11th day of September, 1995.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the Petition of the Government (hereinafter "IRS") to Enforce Internal Revenue Service Summons.[1]

A Hearing on the Petition was conducted on March 9, 1995, at which time the IRS appeared by John A. Marrella, Trial Attorney with the Tax Division of the United States Department of Justice, and the Respondent appeared by Henry M. Buffalo and Dennis J. Peterson, Esqs. Following the conduct of the Hearing, each of the parties filed supplemental briefing.

For reasons which follow, we recommend that the IRS's Petition be granted.

### II. *Factual and Procedural History*

On July 29, 1992, Revenue Agent William Reinke ("Reinke"), who is assigned to the Examination Division of the Office of the District Director of the IRS, in St. Paul, Minnesota, hand delivered an Administrative Summons, pursuant to Title 26 U.S.C. § 7603, upon the Respondent through its attorney, Dennis J. Peterson ("Peterson"). In conjunction with Revenue Agent Mark T. Fischer ("Fischer"), who is assigned to the

---

1. Following our issuance of an Order to Show Cause on January 3, 1995, the Respondent filed a Motion to Dismiss or, alternatively, for Summary Judgment, which asserted that the Court lacked jurisdiction over the subject matter of the Petition, and that the Petition failed to state a claim upon which relief can be granted. In view of the fact that, undoubtedly, we have the jurisdiction to enforce an Administrative Summons of the Internal Revenue Service and our finding, that the Petition states a cognizable claim for enforcement, we recommend that the Respondent's Motion be denied, but we treat the arguments raised as substantively opposing the enforcement that the Petitioner seeks. *United States v. Carter,* 988 F.2d 68, 69 (8th Cir.1993).

Examination Division of the Office of the District Director in Duluth, Minnesota, Reinke was conducting an investigation into the tax liabilities of the Respondent, including the Respondent's liabilities, if any, for wagering excise taxes during the period from January 1, 1986, through and including April 30, 1992.

The Administrative Summons directed Peterson to appear before Fischer at 316 N. Robert Street, Room 300, Federal Courts Building, in St. Paul, Minnesota, on August 10, 1992, to testify and to produce for examination documents and records, all of which were fully described in an attachment to the Summons, and all of which generally relate to certain gaming activities—in the nature of "pull tabs" and "tip boards"—which are conducted by the Respondent on the Fond du Lac Reservation, in accordance with the Indian Gaming Regulatory Act of 1988, Title 25

U.S.C. § 2701 *et seq.* ("IGRA"). Peterson resisted the Summons, arguing that the Petitioner was without authority to impose a Federal excise tax upon the wagering in question and that, therefore, the Summons was without a lawful purpose. Accordingly, the Respondent declined to comply with the Summons.[2]

The processing of the Summons then went into hiatus for a period of over two years, during which the IRS continued its consideration of whether certain gaming operations, that were conducted by an Indian tribal government, should be subject to the Federal excise tax on wagering, as allowed by Title 26 U.S.C. §§ 4401(a) and 4411. By Revenue Ruling 94–81, the Petitioner generally reaffirmed the contents of an earlier Technical Advice Memorandum, and concluded that a Federal excise tax on wagering should apply to the pull tab operations of an Indian tribal

---

**2.** At some risk of oversimplification, the key dispute between the parties arises from their divergent interpretations of Title 25 U.S.C. § 2719(d), which provides, in pertinent part, as follows:

> The provisions of the Internal Revenue Code of 1986 (including [the Sections dealing with the taxation of wagering]) concerning the reporting and withholding of taxes with respect to the winnings from gaming or wagering operations shall apply to Indian gaming operations * * * in the same manner as such provisions apply to State gaming and wagering operations.

[Emphasis supplied].

The Respondent argues that, in using a disjunctive "or," Congress intended to say that the Code provisions "concerning the reporting and withholding of taxes with respect to the winnings from gaming" or "concerning wagering operations," shall apply to Indian gaming operations as they apply to State gaming and wagering operations. In contrast, the Petitioner reads this provision as being limited to the "reporting and withholding of taxes" on "winnings" from "gaming or wagering operations," without the slightest application to the taxation of the "revenues" that the Indian tribal government obtains from such operations.

Urging a parity in the application of the Federal excise tax upon wagering operated by a State agency or by an Indian tribal government, the Respondent weaves in the exemption provisions of Title 26 U.S.C. § 4402(3), so as to except from taxation any "wager placed in a * * * lottery which is conducted by [a tribe] under authority of [tribal] law * * * if such wager is placed with the [tribal] agency conducting * * * such lottery, or with its authorized employees or agents." From its perspective, however, the Petitioner un-

derscores that the provisions of Title 26 U.S.C. § 7871(a)(2) allow an Indian tribal government to be treated as a State for purposes of securing "any exemption from, credit or refund of, or payment with respect to, an excise tax" only in certain respects—none of which apply to the Federal excise tax on wagering. Accordingly, the Petitioner contends that, absent what it regards as the tortured reading of Section 2719(d) that the Respondent implores, the Petitioner is entitled to impose a Federal excise tax upon the wagering which underlies the Administrative Summons here.

Of course, the respective arguments of the parties are bolstered by differing principles of statutory construction, as well as by conflicting precepts as to the impenetrability of the sovereign immunity of an Indian tribal government to Federal excise taxation. While we do not minimize the substantive importance of these opposing contentions, we would merely observe that we are not confronted with a Declaratory Judgment action, and our standard of review, for the purposes of enforcing an Administrative Summons, does not require that we resolve these diametrically divergent views on the basis of the "barebones" Record that is presently before us. Obviously, when and if the meaning of Section 2719(d) must be ascertained, a full record of any available legislative history, together with focussed legal briefing, will be essential. For understandable reasons, we do not reach that ultimate issue, but conclude that the Petitioner's interpretation of Section 2719(d), and the interrelationship of that Section to those provisions which relate to the imposition of a Federal excise tax on certain types of wagering, is neither frivolous nor, for that matter, unfounded.

government, even though the same tax would not be applicable to a "lottery" conducted by a State agency that was operating under State law. See, *Rev.Rul. 94–81*.

Now, the Petitioner seeks this Court's Order to enforce the directives of the IRS's Administrative Summons. In addition to the Declaration of Reinke, the IRS has supported its Petition, by the Declaration of Fischer, which provides in relevant part:

6. The books, papers, records or other data sought by the summons are not already in possession of the Internal Revenue Service.

7. All administrative steps required by the Internal Revenue Code for issuance of a summons have been taken.

8. It is necessary to obtain testimony and to examine the books, papers, records, and other data sought by the summons in order to properly investigate the federal tax liability of Fond du Lac Reservation Business Committee for all periods from January 1, 1986 through and including April 30, 1992.

9. There has been no referral for criminal prosecution to the Department of Justice within the meaning of 26 U.S.C. Section 7602(c)(2).

These averments have not been controverted, and the Respondent challenges the propriety of the Administrative Summons solely upon the ground that, in the Respondent's view, the Summons does not perform a proper legal function.[3]

### III. *Discussion*

■ A. *Standard of Review.* The Administrative Summonses of the IRS are not self-enforcing. *In re Testimony of Arthur Andersen & Co.*, 832 F.2d 1057, 1059 n. 2 (8th Cir.1987). However, "[i]f the taxpayer refuses to comply with [an IRS] summons, the United States may seek judicial enforcement * * * in the appropriate federal district court which 'shall have jurisdiction * * * to compel such attendance, testimony, or pro-

duction of books, papers, or other data.'" *United States v. Carter*, 988 F.2d 68, 69 (8th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 744, 126 L.Ed.2d 706 (1994), citing *United States v. First National Bank*, 727 F.2d 762, 763 (8th Cir.1984); see also, *Title 26 U.S.C. §§ 7402(b) and 7604(a)*.

■ In reviewing a Petition for Enforcement of Administrative Summons, the burden upon the petitioning party is not to demonstrate that probable cause for a violation of the Internal Revenue Code exists but, rather, that a prima facie showing has been made that the Summons was issued in good faith. As the Court stated in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–56, 13 L.Ed.2d 112 (1964):

[T]he Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired. He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed * * *.

"The IRS may satisfy this burden merely by presenting an affidavit that attests to these facts sworn to by an officer or agent who issued the summons." *United States v. Sindel*, 854 F.Supp. 595, 599 (E.D.Mo.1994), vacated on other grounds, 53 F.3d 874 (8th Cir.1995), citing *United States v. Leventhal*, 961 F.2d 936, 939–40 (11th Cir.1992). Once the IRS makes a prima facie showing, then the burden shifts to the Respondent either to disprove one or more of the *Powell* factors, or to demonstrate that enforcement of the Summons would constitute an abuse of the Court's process. *United States v. Meininger*, 101 F.R.D. 700, 703 (D.Neb.1984), citing *United States v. LaSalle*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1977).

---

**3.** In its Reply Memorandum, the Respondent suggests that the "summoned data" is not relevant to a "legitimate purpose," but the phrasing of that issue merely begs the question as the Respondent offers no basis to conclude that the data requested is not related to the contemplated taxation. Properly phrased, the Respondent solely takes issue with the legitimacy of being subjected to the Federal excise tax on wagering.

 Such an abuse of process "would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, supra, 379 U.S. at 58, 85 S.Ct. at 255. As noted, "[t]he taxpayer carries the burden of proving an abuse of the court's process." *United States v. Stuart*, 489 U.S. 353, 360, 109 S.Ct. 1183, 1188, 103 L.Ed.2d 388 (1989). "[T]his means that those opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *United States v. LaSalle*, supra, 437 U.S. at 316, 98 S.Ct. at 2367. "Without doubt, this burden is a heavy one." *Id.* In the final analysis, however, a challenge to the lawful purpose being served by a Summons does not create "a forum in which to contest the validity of the underlying assessments." *United States v. Mueller*, 930 F.2d 10, 12 (8th Cir.1991), citing *United States v. Harper*, 662 F.2d 335, 336 (5th Cir.1981) (per curiam). "The taxpayer must make a substantial preliminary showing of abuse of the court's process before even limited discovery need be ordered." *Tax Liabilities of: John Does v. United States*, 866 F.2d 1015, 1019 (8th Cir.1989).

 B. *Legal Analysis*. We find, based upon the uncontroverted Record before us, that the Petitioner has satisfied its obligation of demonstrating that the information being sought is relevant to an assessment of the Respondent's liability to the Petitioner for certain Federal excise taxes, that the information is not already within the Petitioner's possession, and that the administrative steps required by the Code have been followed. Accordingly, the issue resolves to one of determining whether the Petitioner's investigation will be conducted pursuant to a legitimate purpose. We find that it will.

In so finding, we are mindful of the Respondent's firmly-held belief that its pull tab operations benefit from a statutory exemption that arises from a stylized interpretation of Title 25 U.S.C. § 2719(d)(1). While there are some factors which promote such a statutory interpretation, there are others which cogently counsel against that interpretation as an implausible one. Notably, the Petitioner's planned investigation is not pinioned upon a newly rationalized legal formulation, but is founded upon an analysis that was first publicized in April of 1992, as a Technical Advice Memorandum, and was subsequently reaffirmed as a formally published Revenue Ruling of the Commissioner. Of course, such a Revenue Ruling is not dispositive of the issue before us, but we are persuaded that the crux of the parties' conflict is not founded upon the Petitioner's guile, fiat, caprice or bad faith. *McMartin Industries, Inc. v. Vinal*, 441 F.2d 1274, 1276 (8th Cir.1971) (Revenue Rulings entitled to weight in the interpretative process); *United States v. Hall*, 398 F.2d 383, 387 (8th Cir.1968). Nor does the Respondent make any showing that the enforcement of the Administrative Summons would be an act of bad faith. Rather, the Respondent urges that a validation of the Summons, through Court enforcement, would be an abuse of the Court's process. We disagree.

 With abundant candor, the Petitioner acknowledges that it "seeks to tax Indian tribes and all other taxable entities to the extent allowed by law." This, of course, is a proper and legitimate purpose, which would support an investigatory effort, so long as the law authorizes the imposition of the tax being investigated. Unfortunately, the ascertainment of the propriety of the tax, both as to its levy and as to its amount, is fact-dependent. A simple reading of the IRS's Technical Advice Memorandum, and its subsequent Revenue Ruling, makes clear that there are factual precursors to the imposition of the proposed tax which must be resolved, not the least of which is an ascertainment of Congress's intent. We cannot discount the distinct possibility that, through the Petitioner's planned investigatory effort, the panoply of factual issues, that are attendant to the imposition of the contemplated Federal tax, will be narrowed, if not resolved.[4] Accord-

---

4. During the course of the Hearing in this matter, we invited the parties to draw our attention to any authority which addressed the prospect of enforcing an Administrative Summons which

ingly, we find no prospect for an abuse of this Court's process if the Summons is enforced.[5] Of course, we intimate no view as to whether the proposed tax is proper, for we merely find that the proposed investigation serves a legitimate and proper purpose.

WHEREFORE, It is—

RECOMMENDED:

1. That the Respondent's Motion to Dismiss [Docket No. 4] be denied.

2. That, pursuant to the provisions of Title 26 U.S.C. § 7604(b), the District Court should issue its Order compelling the Respondent to produce the records and witnesses, that are detailed in the Petitioner's Administrative Summons, at a time and at a place, in the State of Minnesota, to be designated by the Petitioner.

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 24,** 1995, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 24, 1995,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.

---

was the product of *ultra vires*. None have been brought to our attention, and our independent research has been equally unsuccessful. We would note, however, that the fact that an Administrative Summons was directed to tax assessments which were beyond the applicable statute of limitations did not deter the Supreme Court, in *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), from concluding that a Summons would serve a legitimate purpose.

We think the same analysis applies here. Whether there is parity in the application of the Federal excise tax upon States and upon Indian tribal governments involves a patchwork of factual issues that arise from the statutory and regulatory definitions of a "lottery," a "wager," and the exception provided by Title 26 U.S.C. § 4421(2)(A)—to name but a few. We think that the proposed investigation serves a proper purpose in addressing these and the myriad of other factual questions which must precede a finding of tax liability.

5. As our Court of Appeals has made plain, the enforcement of an Administrative Summons invokes a summary proceeding which, in the ordinary course, does not involve discovery, and is not consumed with the ultimate resolution of the contested facts or principles of law. *United States v. Mueller,* 930 F.2d 10, 12 (8th Cir.1991) (Taxpayer could not use the enforcement proceedings to contest the validity of the underlying assessments); *Tax Liabilities of: John Does v. United States,* 866 F.2d 1015, 1019 (8th Cir.1989) (Taxpayer must make a substantial showing of abuse of process before even limited discovery allowed). Here, the Respondent asserts that, ultimately, its interpretation of the applicable statutes will prevail and, therefore, the Petitioner's investigative effort should be precluded so as to avoid the resultant abuse of process. Notwithstanding the Respondent's confidence in its interpretative judgments, the Petitioner's interpretation is not wanting in factual and legal support and we do not regard the "abuse of process" question as being properly resolved in favor of the party who ultimately prevails in a genuinely contested application of the law. Such a standard of review would effectively deter the Petitioner's capacity to investigate tax claims unless it could reasonably assure its ultimate success on the merits. Not surprisingly, we have found no authority in support of such a restrictive standard in the review and enforcement of Administrative Summonses.