**UNITED STATES of America, Petitioner,**

v.

**A.G. WELLS, JR., Respondent.**

**Misc. No. 496–008.**

United States District Court,
S.D. Georgia,
Savannah Division.

March 25, 1996.

424

Lawrence B. Lee, Savannah, GA, for U.S.

Alvin Grady Wells, Jr., Hinesville, GA, for A.G. Wells, Jr.

## ORDER

EDENFIELD, Chief Judge.

### I. BACKGROUND

Before the Court is the motion of the Internal Revenue Service (IRS) to enforce an IRS summons resisted by attorney A.G. Wells, Jr. According to IRS agent Kathleen Vaught, Wells and his wife failed to file federal income tax returns for 1990, 1991 and 1992. Upon being contacted by the IRS, Wells filed for those years but an IRS audit ensued. In June, 1995, Vaught subpoenaed records relating to Wells's trust account (also referenced as "escrow account") for the December 31, 1991—January 31, 1993 time period.[1] The IRS had been notified of a $64,000 cash deposit Wells had made into a Georgia bank. Wells attests that he had deposited the money on behalf of a client in connection with his client's 1992 real estate purchase. The subpoena was served upon both Wells and his wife.

In response, Wells turned over some records but not those of his trust account, which the IRS believes will provide more information about, inter alia, the $64,000 cash transaction. Appearing before this Court during a March 25, 1996 hearing, Wells insisted that he had nothing to hide, that he had notified his "$64,000 client" of the hearing (no one else appeared besides Wells and the Government), and that he simply wanted to uphold

---

1. The summons, in part, directed Wells to produce:

   All bank statements, cancelled checks, deposit slips, check stubs, debit memos, and all other documents for all open and/or closed client escrow or trust accounts maintained by, under

his duty to maintain the attorney-client privilege, though he also objected on the ground that the IRS should not be permitted to conduct a "general fishing expedition" into his trust accounts, violating the privacy interests of his other clients in the process.

The privilege Wells asserts arises from his client's 1992 real estate purchase. Wells provides little in the way of details about the purchase. He claims he "made an inquiry of the purchaser about the source of the funds and the purchaser gave an explanation which was plausible at that time." A.G. Wells Aff. at 1. Wells further attests that he distributed 100% of the funds to pay the purchase price of the real property. Id. at 2. The client, according to Wells, objects to disclosure of information about the transaction. Id.

Wells also repeats what he in the past has insisted to the IRS: "that there [is] no information within the trust account that would show that [Wells, who admits that he owes what he estimates to be approximately $20,000 in back taxes, id., at 3] owe[s] any tax liability greater than that which the Government had assessed [against him]. . . ." Id. at 4. The IRS refuses to accept Wells's own assertions, but instead insists that it is entitled to the trust account documentation notwithstanding Wells's invocation of his client's attorney-client privilege.

### II. ANALYSIS

██ Wells has the burden of proving that the attorney-client privilege applies to the communications or documents the IRS seeks. In Re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir.1992); Kelling v. Bridgestone/Firestone, Inc., 157 F.R.D. 496, 497 (D.Kan.1994). In order to invoke the attorney-client privilege, Wells must establish the following:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made

the control of and/or for which signature authority has been granted to A.G. Wells, Jr. and/or Marie Wells for the period December 31, 1991 through January 31, 1993.

Petition Exh. A–1 at 2 ¶ 4.

(a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*U.S. v. Noriega, Cable News Network,* 917 F.2d 1543, 1550 (11th Cir.) *cert. denied,* 498 U.S. 976, 111 S.Ct. 451, 112 L.Ed.2d 432 (1990) (quoting *U.S. v. Kelly,* 569 F.2d 928, 938 (5th Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978)); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 441–42 (S.D.N.Y.1995).

■ The privilege is to be construed narrowly because it serves to obscure, rather than further, the truth. *Noriega,* 917 F.2d at 1551; *Cameron v. GM Corp.,* 158 F.R.D. 581, 586 (D.S.C.1994). That is why in the Eleventh Circuit the communication between an attorney and his client will not be protected unless it is intended to remain confidential and, under the circumstances, was reasonably expected and understood to be confidential. *Noriega,* 917 F.2d at 1551.

■ Wells does not deny that the IRS could obtain the financial information from his client, or even from other parties to the real estate transaction in question. Hence, there is nothing confidential to protect. "If [the documents] could have been compelled by process were [they] in the hands of the client [or third parties], [they] must be produced even though [they are] now in the hands of the attorney." 2 Weinstein's Evidence ¶ 503(b)[03], citing *Fisher v. U.S.,* 425 U.S. 391, 403–04, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) ("pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice").

■ More importantly, Wells fails to advance facts showing that the attorney-client privilege is even implicated. *In re Grand Jury Subpoena,* 831 F.2d 225, 228 (11th Cir. 1987) ("The privilege only protects communications between an attorney and his client made for the purpose of securing legal advice.... *An attorney who acts as his client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged* ") (emphasis added).

No "last link" showing is made, *see In re Grand Jury Matter No. 91–01386,* 969 F.2d 995, 997–98 (11th Cir.1992) (the last link doctrine excepts from disclosure requirement where disclosure of the identity would also reveal the privileged motive for the client to seek legal advice), nor can there be one because Wells admits that he did nothing more than "act[ ] as his client's agent for receipt or disbursement of money or property to ... third parties [and thus was] not acting in a legal capacity, [in which case] records of such transactions are not privileged." *In re Grand Jury Subpoena,* 831 F.2d at 228; *see also U.S. v. Leventhal,* 961 F.2d 936, 939–40 (11th Cir.1992) (Identity of a client or matters involving receipt of fees from a client are not normally within attorney-client privilege, subject to "last link" doctrine exception).

■ Wells also has failed to assert the attorney-client privilege on a document-by-document basis. *Grand Jury Subpoena,* 831 F.2d at 227. Nor does Wells provide this Court with any authority for granting him relief merely because his client also is being scrutinized by the IRS. Wells Aff. at 2–3.

■ Finally, Wells argues that the IRS summons should not be enforced because "a substantial portion of the information which the Government has sought in this case [is] required solely for the purpose of harassing and annoying [Wells] and causing [him] undue inconvenience and expense." Respondent's 3/11/96 Counterclaim at 1. There is no doubt that the IRS has been and can be unreasonable, at times employing tactics no

better than the secret police in some dictatorships.

But Wells did not negate Vaught's testimony that he failed to file taxes for three years. He admits that he owes, by his own estimate, some $20,000 in back taxes. Wells Aff. at 4. The IRS is not required to rely on Wells' word alone that the $64,000 cash is what he says it is: part of an innocent real estate purchase. Wells may subjectively believe that he was entitled to take his client's word as to the currency's origin; the objective facts, however, entitle the IRS to ferret out more information about that money, as well as investigate Wells' trust account for surrounding financial information to verify the accuracy of his late-filed returns. *See, e.g., La Mura v. U.S.,* 765 F.2d 974, 981–83 (11th Cir.1985). Large amounts of money can easily be divided into smaller amounts to disguise otherwise tax-reportable income. To that end, the subpoena's time limits are reasonably confined, and its reach is not overbroad.

The IRS has shown through affidavit and live testimony that it satisfied its enforcement burden under *U.S. v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964), and Wells has failed to meet his "heavy burden" of showing that enforcement would constitute an abuse of the Court's process. *Leventhal,* 961 F.2d at 939–40. 26 U.S.C. § 7601, it must be remembered, grants the IRS broad authority to investigate any person who *may* be liable for taxes, and § 7602 empowers the IRS to examine any books, records, (etc.) from any person or third party " 'relevant or material to such inquiry.' " *La Mura,* 765 F.2d at 979 (quoting *U.S. v. Bisceglia,* 420 U.S. 141, 145–46, 95 S.Ct. 915, 918–19, 43 L.Ed.2d 88 (1975)). The Government's burden to demonstrate that subpoenaed documents are relevant is "slight." *La Mura,* 765 F.2d at 981. The IRS has met that burden, and Wells has failed to overcome it.

### III. *CONCLUSION*

Accordingly, the IRS' motion to enforce its summons is *GRANTED.* Wells is directed to comply immediately and in all respects. Wells' "counterclaim," for which he has shown no legal grounds, is *DISMISSED WITH PREJUDICE.*

**SO ORDERED.**