**UNITED STATES of America, Petitioner–Appellee,**

**v.**

**Robert W. RITCHIE, personally and in his capacity as a partner/officer of Ritchie, Fels & Dillard, P.C., Respondent–Appellant.**

No. 92–6393.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 19, 1993.

Decided Feb. 3, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 4, 1994.

Gary R. Allen, Acting Chief (briefed), Charles E. Brookhart, John A. Dudeck (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, David G. Dake, Asst. U.S. Atty., Knoxville, TN, Jose Francisco De Leon, U.S. Dept. of Justice, Tax Div., Washington, DC, for petitioner-appellee.

W. Thomas Dillard (argued and briefed), Ritchie, Fels & Dillard, Knoxville, TN, Gerald H. Goldstein (argued and briefed), San Antonio, TX, for respondent-appellant.

Before: NELSON and BATCHELDER, Circuit Judges, and MATIA, District Judge.*

* The Honorable Paul R. Matia, United States District Judge for the Northern District of Ohio, sitting by designation.

ALICE M. BATCHELDER, Circuit Judge.

In this case we are asked to decide whether an IRS summons issued to a lawyer and instructing that the lawyer disclose the identity of and fee arrangement with certain cash-paying clients can survive a challenge by the lawyer that such information is protected from disclosure by the Fifth and Sixth Amendments. We reluctantly answer in the affirmative.

## I

### A. Facts

Respondent-appellant Robert W. Ritchie practices law with Ritchie, Fels & Dillard, P.C., a Knoxville, Tennessee law firm. His practice consists primarily of criminal defense work. In the course of his practice, he occasionally receives cash payment for services rendered. In 1989 Ritchie received three cash payments over $10,000; pursuant to I.R.C. § 6050I, Ritchie submitted IRS Form 8300, notifying the Internal Revenue Service of the cash payments. Ritchie, however, refused to disclose (as also required by § 6050I and Form 8300) the nature of the services rendered or the name, address, and taxpayer identification number for each of the three clients. Ritchie instead informed the IRS that such information was privileged and that he was legally and ethically bound by the attorney-client privilege, the Fifth Amendment, the Sixth Amendment, and the Tennessee Code of Professional Responsibility not to disclose it.

Revenue Agent Rhonda Winter on behalf of the IRS issued a summons requiring that Ritchie produce documentary or testimonial evidence that would provide the information missing from the Forms 8300. Ritchie again refused to comply, Ritchie's three unnamed clients filed petitions as John Doe 1, John Doe 2, and John Doe 3 to quash the summons, and Ritchie's firm intervened on the side of its clients.[1]

The case was assigned to District Judge Jarvis, and the IRS responded to the motion

to quash by filing a motion to dismiss for lack of jurisdiction, arguing that neither the Does nor the law firm could oppose the summons at that stage of the summons process. It contended that the Does and the law firm must first refuse to obey the summons, and then after the IRS brought an action to enforce the summons, they could challenge the summons's validity in the enforcement proceeding. Judge Jarvis agreed and held that the general rule prohibits the summoned witness or the taxpayer from acting preemptively to enjoin a summons before the IRS has sought to enforce it and that this matter did not fall within any exception. Judge Jarvis also rejected the firm's contention that because the IRS's real interest was investigating the unnamed clients and not the law firm itself, the summons was invalid for failure to comply with I.R.C. § 7609(f), the John Doe summons provisions; the court held that because the IRS had at least some legitimate interest in the firm's tax liability, its other motivations were irrelevant.

The IRS then petitioned the court for an order enforcing the summons, and the case was assigned to District Judge Hull. After the court issued an order directing Ritchie to show cause why the summons should not be enforced, Ritchie responded that he could not comply because his cooperation would violate the attorney-client privilege, his clients' Fifth Amendment rights, his clients' Sixth Amendment rights, and the Tennessee Code of Professional Responsibility. He also argued that he had provided all the information that the IRS needed to investigate his or his firm's tax liability and that the only reason the IRS was seeking to enforce the summons was to get information about the John Doe clients. Because the IRS had not complied with the "John Doe summons" provisions, Ritchie argued, the IRS should not be permitted to enforce the summons. John Does 1, 2, and 3 intervened and raised similar arguments. The government responded that two federal circuits had rejected Ritchie's position and that the district court should do the same. It also argued that Ritchie could

---

1. This motion to quash also included another firm and several other Joe Does. Because these other parties are not before us on appeal (nor did they participate in the later enforcement proceeding), we do not discuss them further.

not relitigate Judge Jarvis's finding that the IRS had a legitimate reason for issuing the summons, namely, the investigation of Ritchie's law firm.

Judge Hull held an evidentiary hearing and issued an order enforcing the summons. He found that Ritchie's constitutional arguments had been persuasively rejected by the case law and saw no reason to hold otherwise. On the "John Doe summons" issue, the court found that even though the IRS had not used the John Doe summons procedure, the summons could be treated as a John Doe summons. Judge Hull then issued an order enforcing the summons, finding that it met the standards for the enforcement of a John Doe summons. This appeal followed.

### B. Statutory Background

The Internal Revenue Code provides that "[a]ny person (1) who is engaged in a trade or business, and (2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions), shall make the return described in subsection (b)." I.R.C. § 6050I(a). Subsection (b) identifies the required return as one that (1) "contains (A) the name, address, and TIN [taxpayer identification number] of the person from whom the cash was received, (B) the amount of cash received, (C) the date and nature of the transaction, and (D) such other information as the Secretary may prescribe," and (2) complies with the Secretary's regulations. I.R.C. § 6050I(b); see Treas.Reg. § 1.6050I–1(e)(2) (specifying Form 8300 as the required reporting form).

■ Congress has charged the IRS with investigating taxpayers' compliance with revenue laws, see I.R.C. § 7601,[2] and the IRS has been given powerful means to do so:

> For the purpose of ascertaining the correctness of any return ... or determining the liability of any person ..., the Secre-

tary is authorized (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; (2) To summon the person liable for tax or required to perform the act [e.g., filing a Form 8300] ... to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; ....

I.R.C. § 7602(a). Courts have consistently held that § 7602 endows the IRS with expansive information-gathering authority. See, e.g., La Mura v. United States, 765 F.2d 974 (11th Cir.1985). Probable cause in the traditional sense is not required for the IRS to investigate. See United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975).

There are specific statutory requirements for issuing summonses to "third-party recordkeepers." See I.R.C. § 7609.[3] If the taxpayer whose tax liability is being investigated is a known, named individual, the IRS must give notice to that person that a summons has been issued to the third-party recordkeeper. I.R.C. § 7609(a). On the other hand, if the identity of the party under investigation is unknown, notice need not be given (for obvious reasons), see I.R.C. § 7609(a)(4)(C), but other requirements apply to these "John Doe" summonses:

> **(f) Additional requirement in the case of a John Doe summons.**—Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—
>
> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
>
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have

---

**2.** Section 7601 provides:

> **(a) General rule.**—The Secretary shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be

liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.

**3.** An attorney can be classified as a third-party recordkeeper. See I.R.C. § 7609(a)(3)(E).

failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

I.R.C. § 7609(f).

The mechanism for a taxpayer's challenge to a summons differs according to the statutory provision under which the summons is issued. If the summons is issued to the taxpayer whose potential tax liability is being investigated, that taxpayer may challenge the summons before the IRS hearing officer and may, if the IRS seeks enforcement of the summons in the district court, challenge the summons in district court. If the summons is issued to a third-party recordkeeper concerning a named taxpayer, the named taxpayer has the right to begin a proceeding to quash the summons (before an enforcement action is brought by the IRS), see I.R.C. § 7609(b)(2)(A), and to intervene in any action brought to enforce the summons, see I.R.C. § 7609(b)(1). In the case of a John Doe summons, the Doe has no right to intervene in the hearing on the summons's issuance required by I.R.C. § 7609(f), see I.R.C. § 7609(h)(2) ("The determinations required to be made under subsection[ ] (f) . . . shall be made ex parte and shall be made solely on the petition and supporting affidavits."), and the Doe has no right to file a motion to quash the summons once it has been issued, see I.R.C. § 7609(b)(2)(A) (only those entitled to notice under subsection (a) have the statutory right to begin a proceeding to quash); however, once an enforcement action is begun, the Doe may intervene and challenge enforcement of the summons. With the statutory framework in mind, we turn to discussion of the issues at hand.

## II

We must decide several issues in this appeal. First, what factual findings are the appropriate basis for this court's opinion—Judge Jarvis's findings or Judge Hull's findings? Second, in light of these factual findings, was Judge Hull's conclusion correct that the summons could and should be treated as a John Doe summons? Third, if this was for all intents and purposes a John Doe summons, is the summons enforceable as a John Doe summons? Finally, can enforcement of the IRS summons withstand Ritchie's constitutional challenges?

### A. Factual Findings

As to the facts of this matter, there is considerable conflict between Judge Jarvis's opinion and Judge Hull's opinion. Once we determine which judge's factual statements are the appropriate factual findings, we must adopt them unless they are clearly erroneous. See Fed.R.Civ.P. 52(a).

In his written decision, Judge Jarvis made the following conclusions about the facts:

Although it is conceded that the IRS is concerned with the identity of the clients, another focus of the summonses is the records that the law firms are required to maintain of their own income. Under the circumstances, the law firms are both the summoned persons and the taxpayers.

. . . [I]n this case, the person "with respect to whose liability the summons is issued" is clearly the particular law firm.

. . . Even if the IRS's primary purpose is to find out the identity of the law firm's clients, the IRS still has a legitimate investigative purpose for issuing the summonses to the law firms. . . . [These summonses are not John Doe summonses] since the summonses did identify the person with respect to whose liability the summons was issued, namely the law firms.

*Doe v. United States*, 777 F.Supp. 590, 594–95 (E.D.Tenn.1991). Judge Jarvis concluded that because the summons had dual purposes it was therefore properly characterized as a standard-issue summons under § 7602(a), not subject to a motion to quash. He then dismissed the case for lack of jurisdiction.

Judge Hull concluded otherwise. After a full evidentiary hearing, Judge Hull first noted that "the IRS did not use the John Doe summons procedure or treat the Ritchie firm as a third-party record keeper[;] it proceeded as if the Ritchie firm were the actual target of its investigation." But he ultimate-

ly concluded that the summons was solely for the purpose of gaining information about unnamed third-parties:

In light of the very credible evidence offered by the respondent, the Court finds that, in the instant case, the IRS is not conducting an investigation into the correctness of Forms 8300 filed by Ritchie, Fels & Dillard, P.C., nor is it investigating the firm's liability for penalties [under the Code], as claimed. To the contrary, the IRS is making a general search for the identities of cash-paying clients.

This finding is in direct conflict with Judge Jarvis's statement that the summons had dual purposes.

The government contends that Ritchie was barred by the doctrine of res judicata from relitigating the purpose of the instant summons, that Judge Hull erroneously rejected this contention when he should have adopted Judge Jarvis's prior rulings, and that we are bound by the facts as Judge Jarvis found them. We disagree.

 Before Judge Jarvis was a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. But the fact

that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings. *See id.* ("The *res judicata* effect of a 12(b)(1) motion is ... limited to the jurisdictional issue."); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 at 225 (1990) ("Inasmuch as a Rule 12(b)(1) motion basically is one in abatement, a dismissal is not a decision on the merits and has no res judicata effect that would prevent the reinstitution of the action in a court that has subject matter jurisdiction over the controversy."). Where the court takes evidence for a limited purpose of ruling on jurisdiction, the preclusive effect of such findings is limited to the issue decided. *See Shaw v. Merritt–Chapman & Scott Corp.,* 554 F.2d 786, 789 (6th Cir.) ("while a dismissal for lack of jurisdiction does not constitute an adjudication upon the merits, it does constitute a binding determination on the jurisdictional question, which is not subject to collateral attack"), *cert. denied,* 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977). This limitation on preclusive effect is soundly applied to a situation where, as here, the motion to dismiss was essentially a claim that the challenge was *premature,* not that the court has no subject matter jurisdiction over the dispute regardless of the timing of the challenge.[4] So, although Ritchie's clients were barred (after Judge Jarvis's ruling) from relitigating whether their motion to quash could be heard before the IRS brought an enforcement action, Judge Hull was not bound by any factual findings made by Judge Jarvis for the limited purpose of considering the jurisdictional challenge, and Judge Jarvis understood this to be the case, *see Doe,* 777 F.Supp. at 596 ("This court lacks jurisdiction over these petitions.... The petitioners and intervenors must await an IRS enforcement action before they can assert their claims that the summonses are improper. I express no opinion with respect to the merits of the petitioners' and intervenors' claims.").[5]

___

**4.** The IRS basically conceded that the district court would later have jurisdiction over the dispute when it argued that the petitioners could

not challenge the summons *before* an enforcement action was brought.

**5.** We distinguish those cases in which summary judgment is granted based on a jurisdictional

■ We are therefore left to consider Judge Hull's findings that the summons, although not a John Doe summons in form, was a summons addressing the precise situation in which a John Doe summons should be used. As noted above, Judge Hull found that the IRS had proceeded as if the law firm were the actual target of its investigation, but that in actuality the IRS was not concerned with the firm's tax liability, but only with the identity of the clients who made the cash payments. Although there was evidence to contradict this view[6] and the IRS strenuously objects to Judge Hull's findings, his findings are not clearly erroneous, and we therefore adopt them.

### B. Treatment of the Summons as a John Doe Summons

Having found that the IRS had no bona fide interest in Ritchie's firm's tax liability, Judge Hull reasoned that because the summons was essentially one addressed to the John Doe summons type of situation, he would treat the summons as if it were a John Doe summons and enforce it:

> In light of the foregoing, the Court will treat the instant enforcement procedure as if it were a Section 7609(f) procedure for a third-party John Doe summons. [Judge Hull then set out the statutory requirements for the issuance of a John Doe summons.] ...
>
> In the instant case, we know that the summons in question relates to three particular persons who paid Mr. Ritchie in specific amounts of cash on three specific dates. Because these persons were seeking legal assistance from a well-known criminal defense attorney, because they sought to keep their identities secret, and because they obviously do business with large amounts of cash, there is a reason-

able basis for believing that they may have failed to comply with certain provisions of the Internal Revenue law. Finally, it is obvious that the information sought is not readily available from other sources. The Court believes that this minimal amount of information is sufficient to support the IRS summons, given the clear congressional intent behind the reporting requirement.

> Accordingly, enforcement of the IRS summons in question is hereby OR-DERED.

■ Having adopted Judge Hull's findings of fact, we will affirm Judge Hull's decision to treat the summons as a John Doe summons. As previously discussed, the statutory requirements for summonses issued directly to the taxpayer differ from those for summonses issued to a third party, *compare* I.R.C. § 7602 *with* I.R.C. § 7609, and the IRS's interest in the instant case matches the statutory provisions for a John Doe summons, *see* § 7609(f). However, we must address several potential stumbling blocks that Judge Hull failed to consider. First, Judge Hull ignored the fact that the statute says that a John Doe summons may be *served* "only after a court proceeding in which the Secretary establishes [three enumerated elements]." I.R.C. § 7609(f) (emphasis added) (see text of statute set out *supra*). As the Supreme Court said in *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 322, 105 S.Ct. 725, 731, 83 L.Ed.2d 678 (1985), "if the district court finds in the enforcement proceeding that the IRS does not in fact intend to investigate the summoned party, or that some of the records requested are not relevant to a legitimate investigation of the summoned party, the IRS could not obtain all the information it sought unless it complied with § 7609(f)."[7] *See also United States v. Pow-*

issue or in which the jurisdictional issue is so factually intertwined with the merits of the action as to require a ruling on the merits with a ruling on the jurisdictional issue. These are different situations, requiring different analysis.

6. In her affidavit before the court, Revenue Agent Winter swore that she was "conducting an investigation to ascertain the correctness of Forms 8300 filed by Ritchie, Fels & Dillard, P.C. pursuant to the provisions of Section 6050I of the Code [and] ... investigating the liability, if

any, of Ritchie, Fels & Dillard, P.C., for penalties imposed by Sections 6721 through 6723 of the Code."

7. *Tiffany Fine Arts* concerned the question whether an IRS summons under § 7602, which was issued with the dual purpose of investigating both the summoned party's and the unnamed party's tax liability, had to meet the additional requirements of § 7609. The Court held that the summons did not, "as long as all the information sought is relevant to a legitimate investigation of

*ell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964) (in order to have its summons enforced, the IRS must show that "the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that *the administrative steps required by the Code have been followed"* (emphasis added)).

■ Notwithstanding the language of *Tiffany Fine Arts* and *Powell,* because of the unique facts of this case we will not require the IRS to start the process all over. The elements required by the statute have been reviewed by Judge Hull in a "court proceeding" prior to the enforcement of the summons, and thus the statutory protections to which Ritchie's clients are entitled have been afforded them in spirit, even if not by compliance with the letter of the law.[8] At this stage of the proceedings, it would exalt form over substance to make the IRS go through the motions of having an ex parte court proceeding, getting the summons issued, serving it, defending a motion to quash, and filing a motion for enforcement, all to bring us back to where we are now.[9] We are not suggesting that the IRS may in the future avoid going through the ex parte proceeding required by § 7609(f), for now the IRS has fair notice that if it cannot demonstrate a bona fide interest in investigating the tax liability of the party summoned, it must comply with § 7609(f).

■ More important to our determination is the question whether the requirements of *Tiffany Fine Arts* and *Powell* were

satisfied in this case. Our holding that in this case the IRS need not go back to square one and obtain an ex parte John Doe summons does not imply that the IRS is not required to meet the substantive factors of § 7609(f). The only criterion arguably not satisfied in this case is § 7609(f)(2),[10] which requires that "there be a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law." Although there may be a solid basis to believe that cash-paying criminal defense clients may fail or may have failed to comply with some provision of the Internal Revenue Code, the question is whether this is a legitimate basis for permitting the IRS to discover their names. As noted above, Judge Hull gave three grounds for finding the "reasonable basis" criterion met: (1) the persons were seeking legal assistance from a "well-known criminal defense attorney," (2) they sought to keep their identities secret, and (3) they dealt in large amounts of cash. We reject the first two grounds. While statistically speaking there may be a high correlation between acting in secret to consult well-known criminal defense counsel and being guilty of internal revenue violations, we doubt this is a constitutionally permissible inference. Our legal system requires that the innocent and the guilty alike be permitted to consult counsel on legal matters without attaching penalty to the exercise of that right. To allow such consultation to be used as the basis for creating a class of suspected tax law violators is to unduly burden the right to consult one's attorney. For this

---

the summoned taxpayer." *Tiffany Fine Arts,* 469 U.S. at 324, 105 S.Ct. at 732. Because Judge Hull rejected the IRS's contention that this was a dual-purpose summons, we need not answer the question whether the additional information sought from Ritchie by the IRS was "relevant to a legitimate investigation" of his firm.

**8.** The statutory protections are not strong in any event; the prior approval required is not difficult to obtain because it is given ex parte solely on the basis of the petition and supporting affidavits. *See* I.R.C. § 7609(h)(2). ·

**9.** We also note that it has been held that "the criteria in 26 U.S.C. § 7609(f) governing ex parte

issuance of a John Doe summons pursuant to 26 U.S.C. § 7609(h)(1) are not appropriate grounds to challenge enforcement of the summons." *In re Does,* 688 F.2d 144, 145–46 (2d Cir.1982) (footnote omitted). *But see United States v. Brigham Young Univ.,* 679 F.2d 1345 (10th Cir.1982) (holding that the summoned party may, in an enforcement proceeding, challenge the § 7609(f)(2) determination that there is a "reasonable basis for believing" there may be a violation of a revenue law), *vacated and remanded* (for consideration of possible mootness), 459 U.S. 1095, 103 S.Ct. 713, 74 L.Ed.2d 944 (1983).

**10.** The other two criteria under § 7609(f)—(f)(1) and (f)(3)—are easily satisfied. ·

reason we cannot approve the district court's reliance on these two factors.

■ As to the third factor—paying for services with large amounts of cash—Ritchie asserts an argument similar to the one we have used to reject the district court's first two grounds: to permit the IRS to discover and target those who pay large sums of cash for legal representation would penalize the exercise of a constitutional right. But if Ritchie's argument on this point has a certain persuasive power, it is only because he diverts our focus from the nature of the payment to the surrounding circumstance of the attorney-client relationship. Ritchie argues that "consultation with counsel cannot constitutionally be used to establish 'reasonable basis' for believing that the client has failed to comply with certain provisions of internal revenue law." Ritchie describes the suspect act as "consult[ing] with counsel," but this is not the case; the suspect act is paying over $10,000 in cash *for anything*—in this case legal services. Ritchie continues by arguing that "[a client] must also be afforded the assurance that his choice of attorney will not generate any additional government interest in him as a criminal suspect." Again, while we agree with Ritchie's proposition, the IRS's investigation has nothing to do with the client's choice of attorney; it has everything to do with how the client paid for the services of his attorney.

There may be legitimate grounds for objecting to the government's close supervision of citizens' dealings in currency, but this is an objection to Currency Transaction Reports and the like, not an objection to the government's requirement that a particular profession disclose which of its clients have chosen to deal in large amounts of cash. As was said in *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501 (2d Cir.1991):

> Section [6050I] does not preclude would-be clients from using their own funds to hire whomever they choose. To avoid disclosure under section [6050I], they need only pay counsel in some other manner than with cash. The choice is theirs. None of the appellants has advanced a legitimate reason why payment other than in cash cannot be made.

*Id.* at 504. Although a good argument can be made that citizens should have the right to pay for services in cash without inviting the eyes of Government to scrutinize their financial affairs, we have searched in vain to find support for the proposition that there is a constitutionally protected liberty interest in spending large amounts of cash without having to account for it. *Cf. United States v. Bisceglia*, 420 U.S. 141, 149, 95 S.Ct. 915, 920, 43 L.Ed.2d 88 (1975) ("[The IRS] has a legitimate interest in large or unusual financial transactions, especially those involving cash. The reasons for that interest are too numerous and too obvious to catalog."). We must conclude that there is no reason to grant law firms a potential monopoly on money laundering simply because their services are personal and confidential; other businesses must divulge the identity of their cash-paying clients in keeping with lawful revenue regulations and law firms should not be an exception to this rule. We therefore hold that the simple fact that these clients paid for legal services with large amounts of cash is a sufficient "reasonable basis" upon which to issue the John Doe summons.

### C. Constitutional Challenges to the Summons

Moving now to the heart of Ritchie's objections, Ritchie argues four separate grounds for finding the summons unenforceable.

#### 1. Sixth Amendment

■ Ritchie argues that divulging the requested information about his clients would violate their Sixth Amendment right to counsel because it would (1) interfere with the ability of citizens to retain counsel, (2) discourage free and open communication between client and attorney, and (3) possibly destroy the attorney-client relationship through the disqualification of counsel who is later called to testify as to the form of payment.

At least two of our sister circuits have fully addressed this argument and soundly rejected it. *See United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 503–04 (2d Cir. 1991); *Tornay v. United States*, 840 F.2d 1424, 1429–31 (9th Cir.1988). We do the

same for the reasons given in *Goldberger* and *Tornay.*

### 2. *Fifth Amendment*

■ Ritchie next argues that compelling him to provide evidence against his clients violates his clients' Fifth Amendment right against self-incrimination. This argument too has been soundly rejected by our sister circuits. *See, e.g., Goldberger,* 935 F.2d at 503. The privilege against self-incrimination is a personal privilege, *see Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973), and here the client is not the one being compelled. And the attorney may not object that the client may be incriminated by the attorney's testimony (at least not on that ground), *see In re Grand Jury Proceedings (Gordon),* 722 F.2d 303, 308 (6th Cir.1983), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); the attorney may, of course, assert the attorney-client privilege if the requested information is actually privileged.[11] Furthermore, the information required must be incriminating or integrally linked with behavior deemed offensive in order for the Fifth Amendment to be implicated, *see United States v. Alkhafaji,* 754 F.2d 641 (6th Cir. 1985) (analyzing several Supreme Court decisions in this area); paying one's attorney in cash does not fall within this category.

### 3. *Attorney–Client Privilege*

Ritchie argued below that disclosure of this information would violate the attorney-client privilege. He has apparently abandoned this argument on appeal, for it appears nowhere in his brief.[12] In any event, virtually every court to consider the issue has concluded that client identity and payment of fees is not privileged information.[13] *See, e.g., In re Grand Jury Proceedings (Damore),* 689 F.2d 1351, 1352 (11th Cir.1982). And on facts similar to the case at bar, the attorney-client privilege has been held not to be a barrier to enforcement of the summons. *See Goldberger,* 935 F.2d at 504–05; *Tornay,* 840 F.2d at 1426–29.[14]

### 4. *Due Process Violation*

■ Ritchie also argues that disclosure of the requested information places the criminal defense lawyer in the role of providing evidence against his clients for use in criminal prosecution. This, he argues, violates the Due Process Clause by encroaching on the constitutionally required adversary system.

Ritchie never raised this argument below, so we do not consider it. In any case, the argument has been rejected by the other courts that have addressed it. *See Tornay,* 840 F.2d at 1431.

---

11. Ritchie relies on *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), for the proposition that "[a] privilege in the hands of a client is not lost in the hands of his counsel," citing *id.* at 405, 96 S.Ct. at 1578. What Ritchie neglects to mention is that a similar comment was made in *Fisher* but as to the *attorney-client privilege,* not the Fifth Amendment privilege against self-incrimination. In fact, *Fisher* specifically held that the Fifth Amendment did not prohibit the enforcement of a summons issued by the IRS to the taxpayer's attorney for accounting documents related to the representation: "compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself." *Id.* at 402, 96 S.Ct. at 1576. "The taxpayer's privilege under [the Fifth] Amendment is not violated by enforcement of the summonses involved in these cases because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything—and certainly would not compel him to be a 'witness' against himself." *Id.* at 397, 96 S.Ct. at 1574.

12. He mentions the attorney-client relationship as part of his discussion of the Sixth Amendment right-to-counsel issue, but he does not argue the attorney-client privilege.

13. Some circuits recognize the "last link" doctrine as an exception to this general principle. *See, e.g., In re Grand Jury Proceedings,* 517 F.2d 666 (5th Cir.1975). However, our circuit has expressly rejected the last link doctrine, *see In re Grand Jury Investigation No. 83–2–35,* 723 F.2d 447 (6th Cir.1983), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984), and even circuits that do approve of the last link doctrine have held on facts similar to those in the case at bar that the doctrine did not prevent enforcement of the IRS's summons, *see United States v. Leventhal,* 961 F.2d 936, 940–41 (11th Cir.1992).

14. Related to this claim was Ritchie's argument below that disclosure would also violate the Tennessee Code of Professional Conduct. Ritchie has abandoned this argument on appeal.

## III

The district court's order enforcing the IRS summons is AFFIRMED.