**B & B INDUSTRIES, INC. et al., Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Case No. 01–72978.**

United States District Court, E.D. Michigan, Southern Division.

Jan. 29, 2002.

Frederick A. Acomb, Miller, Canfield, Detroit, MI, L. William Houger, Houger & Walt, Seattle, WA, for plaintiffs.

Sheila H. Gaskell, U.S. Attorney's Office, Detroit, MI, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

COHN, District Judge.

### I. *Introduction and Background*

This is a contract dispute. Plaintiffs are independent contractors (mail transporters) who contract with the defendant United States Postal Service (USPS) to transport mail by truck. The USPS has "fixed price contracts [with mail transporters] based, in part, upon the [mail transporters'] annual estimate of the cost and amount of fuel they will use to transport the mail." *See* Defendant's Brief at 1. If fuel costs increase, the mail transporters can request an adjustment in the contract price. All upward adjustments of price are an expense to the USPS.

In 2000, USPS implemented a Bulk Fuel Purchasing Plan (Fuel Plan) and incorporated the Fuel Plan into new and renewal contracts with mail transporters. It is unclear whether the Fuel Plan was also incorporated into existing contracts with mail transporters operating, in effect, as an amendment. To the extent that the Fuel Plan was incorporated solely into new and renewal contracts, there is nothing in the record to suggest that such a provision is improper or that there is a basis on which the Court may review such contracts. For purposes of this motion, the Court will assume that the USPS is incorporating the Fuel Plan in existing contracts with mail transporters. The Fuel Plan requires mail transporters to purchase their fuel from designated suppliers with whom the USPS has pre-negotiated prices.

The mail transporters in their second amended complaint[1] seek declaratory and injunctive relief, making the following claims: 1) violation of the mail transporter's Fifth Amendment rights under the United States Constitution; 2) violation of Postal Regulations; and 3) arbitrary agency action without statutory authority. In essence, the mail transporters assert that the USPS has no legal right to require them to purchase fuel from USPS designated suppliers.[2]

Before the Court is USPS' motion to dismiss for lack of subject matter jurisdiction. For the following reasons, the motion will be granted and the case will be dismissed.

### III.  *Standard of Review*

■ A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial attack or a factual attack on the allegations of the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994). If subject matter jurisdiction is facially attacked, the court must take all material allegations in the complaint as true and construe them in a light most favorable to the non-moving party. *Id.* If, however, there is a challenge to the factual existence of subject matter jurisdiction, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

USPS is attacking the factual existence of subject matter jurisdiction under 12(b)(1).

Alternatively, the motion may be based on Fed.R.Civ.P. 12(b)(6). When analyzing a motion to dismiss pursuant to Fed.

R.Civ.P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. *Weiner v. Klais and Co.*, 108 F.3d 86,88 (6th Cir.1997). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### IV.  *Discussion*

#### 1.

■ The USPS is an agency of the United States. It, therefore, "enjoys sovereign immunity except to the extent waived, 'and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir.1998) (discussing the sovereign immunity of the Small Business Administration (SBA)). In 1970, Congress enacted the Postal Reorganization Act (PRA), 39 U.S.C. § 401 *et seq.*, which states in section 401: "The Postal Service shall have the following general powers: (1) to sue and be sued in its official name...." *Id.* Section 409 of the PRA gives the United States district courts "original but not exclusive jurisdiction over all actions brought by or against the Postal Service."

In 1978, Congress enacted the Contracts Dispute Act (CDA), 41 U.S.C. § 601 *et seq.* This statute divests district courts of subject matter jurisdiction over certain gov-

---

**1.** On December 12, 2001, the Court heard oral arguments on USPS' motion to dismiss plaintiff's first amended complaint. The Court held the motion in abeyance for thirty days to allow plaintiffs to file a second amended complaint.

**2.** The second amended complaint describes a litany of burdens and difficulties the mail transporters suffer by being denied freedom of choice as to fuel purchases.

ernment contractual disputes. *See Campanella,* 137 F.3d at 889–90. In particular, the CDA applies to "any express or implied contract . . . entered into by an executive agency for . . . (2) the procurement of services." 41 U.S.C. § 602(a). Under the CDA, contract disputes with the USPS are to be heard before a contracting officer and are appealable to the Postal Service's Board of Contract Appeals and the Federal Claims Court. *Id.* at §§ 605–09.

The mail transporters argue that the court has subject matter jurisdiction over their claims on the basis of the "sue-and-be-sued" clause of the PRA. In *Campanella, supra* 137 F.3d at 890, the Court of Appeals for the Sixth Circuit held that the CDA divested district courts of subject matter jurisdiction in contract disputes involving the SBA. While Congress conferred jurisdiction in the district courts in a "sue-and-be-sued" clause of the SBA statue, 15 U.S.C. § 634(b)(1), the *Campanella* court reasoned that CDA excluded contract disputes from review by the district courts. *Id.* The *Campanella* court explained that "although a sue-and-be-sued clause governs the Tennessee Valley Authority, Congress expressly exempted a limited class of TVA contracts from the CDA. The exemption would have been wholly unnecessary unless Congress assumed that a sue-and-be-sued clause would not trump the CDA's exclusivity provisions." *Id.* at 891 (citing *A & S Council Oil Co. v. Lader,* 56 F.3d 234, 241–42 (D.C.Cir.1995)) (citations omitted). Therefore, the Court of Appeals reasoned, the CDA divests district courts of jurisdiction over claims involving contracts entered into by an agency even where the statute creating the agency contains a sue-and-be-sued clause.

■ The *Campanella* reasoning applies to the sue-and-be-sued clause of the PRA. While Congress waived sovereignty and allowed the USPS to sue and be sued in

the PRA, the CDA trumps the PRA. Therefore, if the claims raised by the mail transporters fall under the CDA, the court lacks subject matter jurisdiction.

### 2.

■ A claim falls under the CDA if it is "essentially contractual." *RMI Titanium Co. v. Westinghouse Electric Corp.,* 78 F.3d 1125, 1136 (6th Cir.1996). The determination of whether a claim is "essentially contractual" is dependent on "the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate)." *Id.*

#### a.

■ The mail transporters' first claim is for violation of their Fifth Amendment rights under the Constitution. The mail transporters argue that the USPS denied them of their freedom to contract by arbitrarily incorporating the Fuel Plan into all renewal and new mail contracts. They argue that the Fuel Plan infringed upon their right to choose fuel suppliers and control their own fuel purchases. Further, the mail transporters argue that the Fuel Plan constitutes a taking of property because the mail transporters must allow the fuel supplier to enter their property to fill their bulk tanks with fuel.

With respect to the mail transporters' freedom of contract claim, the contracts at issue give rise to the rights which the mail transporters claim were infringed. For example, the mail transporters' claim that the Fuel Plan violates their right to select fuel suppliers. This right is embodied in the contracts at issue. It is necessary to address the underlying contract to assess the mail transporters' freedom of contract claim. Similarly, the mail transporters' takings claim requires an interpretation of the contracts' provisions regarding the shipment and holding of fuel.

Accordingly, the mail transporters' claim for violation of their Fifth Amendment rights is essentially contractual and the court lacks subject matter jurisdiction over it.

b.

■ The mail transporters' second claim is for violation of various Postal regulations.[3] A "plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of regulatory or statutory provisions rather than breach of contract." *Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 77 (D.C.Cir.1985). In *Ingersoll*, the plaintiff brought a federal lawsuit "alleging that the government's decision to terminate [its] contract to supply air compressors and to resolicit bids for the contract was arbitrary and capricious and contrary to several federal acquisition regulations." The *Ingersoll* court held that the plaintiff's claims were barred by the CDA. The District of Columbia Circuit reasoned that dispute was essentially contractual even though the plaintiff alleged violations of federal regulations because the dispute could have been resolved under contract principles, the issues raised were within the unique expertise of the Court of Claims, and the plaintiff was a party to the terminated contract at issue.

The reasoning in *Ingersoll* is applicable here. The determination of whether the USPS has violated the Postal regulations cited by the mail transporters is dependant on an interpretation of the provisions of the Fuel Plan. As in *Ingersoll*, this dispute can be resolved solely on contract principles and interpretation of the contract.

Further, as in *Ingersoll*, the mail transporters' claims require knowledge of "the government contracting process." *Id.* Such issues are "within the unique expertise the Court of Claims." The court, therefore, "must implement the congressional intent to provide a single, uniquely qualified forum for the resolution of contractual disputes."

Finally, the mail transporters have a contractual basis on which to sue the USPS. They are not, therefore, limited to a suit to enjoin the USPS from violating the Postal regulations.

Accordingly, the mail transporters' claim for violation of the Postal regulations is essentially contractual.

c.

■ The mail transporters' final claim is that USPS actions constitute arbitrary agency action without legal authority. The mail transporters argue that the Fuel Plan was incorporated into the contracts without their knowledge of its terms. Therefore, the mail transporters argue that the Fuel Plan provisions are void as a restraint of trade and because the USPS lacked authority to enter into contracts containing the Fuel Plan. Similar to the mail transporters' other claims, to address whether the USPS had authority to incor-

---

3. The mail transporters allege that the following regulations were violated by the USPS' incorporation of the Fuel Plan into their contracts:
— The USPS is prohibited from instructing an HCR contractor how or when to purchase supplies or equipment. *See* USPS Management Instruction PO–530–97–1, § 13.g
— Purchases of fuel may be made from any source at the option of the HCR contractor.

*See* USPS Management Instruction PO–530–97–1, § 16.2.4
— USPS may not attempt to control the HCR contractor's business. *See* USPS Purchasing Manual, 6.1.1.c
— USPS must avoid restrictive specifications and statements of work in its contracts in order to enhance competition and contractor innovation. *See* USPS Purchasing Manual 2.3.1.a(3)

porate the Fuel Plan into the contracts and whether such incorporation was arbitrary requires an examination of the terms of the contracts themselves. Accordingly, again the mail transporters' claim is essentially contractual.

### V. *Conclusion*

Because the CDA divests the district court of subject matter jurisdiction over "essentially contractual" claims where a government executive agency is a party to the contract, this court lacks jurisdiction over the mail transporters' claims against the USPS. Accordingly, the USPS' motion to dismiss is GRANTED and the case is DISMISSED for lack of subject matter jurisdiction.

SO ORDERED.