WAVERLY D. CRENSHAW, JR., CHIEF UNITED STATES DISTRICT JUDGE
Martha Ammons has brought suit against Ally Financial, Inc. under the Telephone *820 Consumer Protection Act ("TCPA"), 48 Stat. 1064, 47 U.S.C. § 227(b)(1)(A)(iii), which prohibits any person, absent the prior express consent of a telephone call recipient, from "mak[ing] any call ... using any automatic telephone dialing system ... to any telephone number assigned to a paging service [or] cellular telephone service." The Complaint alleges that, for more than two years, Ammons received over 500 calls to her cell phone from numbers associated with Ally seeking to recover an alleged debt connected to a car loan. (Doc. No. 1.) Ammons alleges that Ally violated the TCPA by repeatedly placing these non-emergency telephone calls to her cellular telephone using an automatic telephone dialing system or a prerecorded or artificial voice without prior express consent. (Id.)
After the Court denied Ally's motion to dismiss (see Doc. No. 59), Ally filed an Answer (Doc. No. 63) and a Counterclaim (Doc. No. 64). The Counterclaim is a state law claim for fraudulent inducement. (Id.) In sum, Ally alleges that Ammons falsely represented her ability and willingness to repay the balance of auto loan financing provided by Ally. (Id.) Before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaim under Federal Rule of Civil Procedure 12(b)(1) (Doc. No. 73), that Ally opposes (Doc. No. 80).
A. Rule 12(b)(1) and Subject Matter Jurisdiction
A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). Cartwright v. Garner, 751 F.3d 752, 759-60 (6th Cir. 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994) ). A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of the Rule 12(b)(1) analysis. Ritchie, 15 F.3d at 598. A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. Id. Plaintiff bears the burden of establishing that subject matter jurisdiction exists. DLX, Inc. v. Commonwealth of Kentucky, 381 F.3d 511, 516 (6th Cir. 2004). Here, Ammons makes a facial challenge. (Doc. No. 74 at 2.) Accordingly, the Court limits its consideration to the allegations of the Counterclaim and assumes them to be true.
A claim is properly before the Court under either the Court's original or supplemental jurisdiction. Ammons argues that the Court does not have subject matter jurisdiction over the Counterclaim under either the Court's original or supplemental jurisdiction. In response, Ally concedes that the Court does not have original jurisdiction over the Counterclaim, but contends that the Court does have supplemental jurisdiction and may not decline to exercise it. For the Court to have jurisdiction over Ally's counterclaim, therefore, it must be pursuant to the law governing supplemental jurisdiction, 28 U.S.C. § 1367.
B. Whether Supplemental Jurisdiction Exists Over Ally's Counterclaim
The Court has supplemental jurisdiction over claims that do not fall within its original jurisdiction but "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."
*821 28 U.S.C. § 1367(a) ; see also Fed. R. Civ. P. 13 (providing for counterclaims that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim"). The Sixth Circuit has interpreted this rule to require that the claims over which a court asserts original and supplemental jurisdiction must derive from "a common nucleus of operative fact." Blakely v. United States, 276 F.3d 853, 861 (6th Cir. 2002) (citing White v. Cnty. of Newberry, S.C., 985 F.2d 168, 172 (4th Cir. 1993) (recognizing that claims form part of same case or controversy if they "revolve around a central fact pattern") ); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (same).[1]
Based on this principle, Ammons contends that Ally's state law Counterclaim does not fall within the Court's supplemental jurisdiction because it does not share a "common nucleus of operative facts" with her TCPA claim. Ammons argues that the evidence relevant to her TCPA claim is separate and distinct from the evidence that bears upon Ally's fraudulent inducement Counterclaim. The success of the TCPA claim, Ammons argues, does not depend upon whether Ammons fraudulently induced Ally to enter a contract with Ammons. Rather, regardless of whether Ammons fraudulently induced Ally, Ammons will prevail on the TCPA claim if she shows that Ally violated the statutory provisions of the TCPA. Similarly, Ammons contends that Ally's state law Counterclaim can be resolved without any consideration of whether Ally violated the TCPA-i.e., that the determination of whether Ammons fraudulently induced Ally in no way depends upon whether Ally violated the TCPA in attempting to collect on that debt. Ally essentially argues that the Court has supplemental jurisdiction over its Counterclaim because the allegedly illegal phone calls that form the basis for Ammons's TCPA claim arose from Ammons's contractual relationship with Ally under agreements that form the basis of Ally's state law Counterclaim. In other words, Ally maintains that the "context" of the Complaint necessarily involves the same debt as the Counterclaim. (See Doc. No. 80 at 3-5.)
Former District Judge Todd J. Campbell considered a similar question in Ramsey v. Gen. Motors Fin. Co., No. 3-15-cv-0827, 2015 WL 6396000 (M.D. Tenn. Oct. 22, 2015). In Ramsey, the plaintiff also sued for alleged violations of the TCPA, and the defendant filed a counterclaim alleging that the plaintiff breached her contractual obligations under a sales agreement she entered into with the defendant by failing to make payments when due. Id. at *1. Just as here, the defendant sought the deficiency balance purportedly owed on an underlying retail credit agreement. Id. Judge Campbell held that the defendant's counterclaim did not arise from the same case or controversy as the plaintiff's TCPA claim. Id. at *2. He explained:
Although Plaintiff's claim, from a broad perspective, arose from the underlying debt upon which Defendant sues, a closer look reveals that the operative facts from which Plaintiff's federal claim arose are separate and different from the operative facts from which Defendant's state law claim arose. The proof needed to establish Defendant's violation of the TCPA (e.g., calls made, without express consent, with an automatic telephone dialing system or an artificial or prerecorded voice) is different from the *822 proof needed to establish Plaintiff's breach of the [c]ontract (e.g., existence of a valid contract, default, damages).
Id. In reaching this conclusion, Judge Campbell relied upon Salei v. Boardwalk Regency Corp., 913 F.Supp. 993, 999 (E.D. Mich. 1996), which reached the same conclusion in a slightly different context. In Salei, the court held that, although the entire relationship between the parties consisted of the defendant's attempts to collect on the plaintiff's debt, the state and federal claims did not share the same "operative" facts. Salei, 913 F.Supp. at 998-99. More specifically, the Court held that the evidence relevant to the plaintiff's Fair Credit Reporting Act ("FCRA") claim was completely separate and distinct from the evidence relevant to the plaintiff's state law claim for breach of a settlement agreement. See id. at 999 ("[I]rrespective of whether the settlement agreement was breached, [p]laintiff will prevail in his federal claim only if he can prove his allegation that [d]efendant obtained a credit report for an impermissible purpose.... Likewise, [p]laintiff's state claims can be resolved without any consideration whatsoever of a possible FCRA violation."). As in Salei, Judge Campbell found that two separate factual inquiries were required to litigate the federal versus the state claims in Ramsey so the defendant's state law counterclaim did not arise out of the same case or controversy or the same operative facts as the plaintiff's federal TCPA claim. Ramsey, 2015 WL 6396000 at *2. Judge Campbell dismissed the counterclaim. Id.
Other District Courts have recently reached the same conclusion in similar actions-and two of the cases involved Ally. See Vecchia v. Ally Financial, Inc., No. 8:17:cv-2977-T-23AAS, slip op. at 1, 2018 WL 907045 (M. D. Fla. Feb. 15, 2018) ("Although the TCPA claim and the counterclaims result generally from [plaintiff's] alleged failure to pay the loan, the TCPA claim and the counterclaims largely require different evidence.... In sum, the counterclaims' superficial or tangential relation to the TCPA claim fails to establish supplemental jurisdiction."); Riazi v. Ally Financial, Inc., No. 4:17CV1705JCH, 2017 WL 4260847, at *5 (E.D. Mo. Sept. 26, 2017) ("Considering the necessary elements of a TCPA claim and the necessary elements of a breach of contract claim, the Court finds that the proof necessary to establish Riazi's TCPA claim and Ally's counterclaim differ. This reasoning suggests that Riazi's TCPA claim and Ally's breach of contract counterclaim are not derived from a common nucleus of operative facts, and that, therefore, this Court does not have supplemental jurisdiction over Ally's counterclaim."); Ginwright v. Exeter Fin. Corp., No. TDC-16-0565, 2016 WL 5867443 (D. Md. Oct. 6, 2016) (explaining at length how, because the legal and factual issues are different, the evidence would not be "substantially the same" and concluding that "there is little or no connection between a [TCPA] claim concerning the misuse of an automatic dialing system and a counterclaim alleging the failure to pay back a loan"); see also Watkins v. Synchrony Bank, No. 4:15-CV-00842, 2015 WL 5178134, at *5 (M.D. Pa. Sept. 4, 2015) (holding that "[a]lthough defendant's actions were undoubtedly driven by its desire to collect the underlying debt, [p]laintiff's claim and [d]efendant's counterclaim do not share a common nucleus of operative facts" and concluding that a defendant's counterclaim for debt collection is "truly tangential" to a plaintiff's TCPA claim); Graf v. Pinnacle Asset Group, LLC, No. 14-1822(SRN/SER), 2015 WL 632180, at *4-5 (D. Minn. Feb. 12, 2015) (in Fair Debt Collection Practices Act ("FDCPA") action, concluding that claims regarding "action[s] taken in an attempt to collect the debt," rather than concerning "the validity of the debt" are "sufficiently distinct" so arise not to arise from the same transaction or occurrence").
*823 The Court agrees with this authority.[2] Two distinct sets of "operative facts" surround Ammons's TCPA claim and Ally's state law fraudulent inducement Counterclaim.[3] One set is relevant only to the TCPA claim, the other only to the fraudulent inducement Counterclaim; thus, two separate factual inquiries are required in order to litigate the federal claim versus the state law Counterclaim. Resolution of the TCPA claim necessitates inquiry into the facts surrounding Ally's alleged automated, non-emergency telephone calls placed to Ammons's cellular telephone without Ammons's express consent. To be clear, under the TCPA, Ammons must adduce evidence to prove (1) that Ally called Ammons using an automatic telephone dialing system (including a predictive dialer) or artificial or pre-recorded voice, (2) that the calls were placed to Ammons's cellular telephone, (3) that the calls were not made for "emergency purposes," and (4) that the calls were made without Ammons's prior express consent. See 47 U.S.C. § 227(b)(1)(A)(iii). On the other hand, resolution of Ally's fraudulent inducement Counterclaim requires factual inquiry into issues of state fraud and contract law and the validity of an alleged debt. Specifically, under Tennessee law, Ally must adduce evidence to prove (1) the existence of a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statements, and; (5) an injury resulting from the reliance. Lamb v. Megaflight, Inc., 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000). In short, both parties would be required to allege facts and produce evidence that is chronologically separate and unique to each cause of action. Ammons's TCPA claim and Ally's Counterclaim can succeed and do not share a common nucleus of operative fact dependent on the other. Ally's Counterclaim on the car loan has a truly tangential relationship to Ammons's TCPA action. Accordingly, the Court does not have supplemental jurisdiction over the Counterclaim.
C. Arguendo Application of Section 1367(c)(4)
Even if the Court found that it had supplemental jurisdiction over Ally's Counterclaim, it would sua sponte decline to exercise that jurisdiction under 28 U.S.C. § 1367(c)(4) -which grants the Court the power to decline to exercise supplemental jurisdiction "in exceptional circumstances, [or for] other compelling reasons." Specifically, *824 overriding public policy concerns support declining jurisdiction. Federal consumer protection statutes seek to protect consumers from unscrupulous practices "regardless of whether a valid debt actually exists." Baker v. G. C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982) (discussing the purpose of the FDCPA); see also Leatherwood v. Univ. Bus. Serv. Co., 115 F.R.D. 48, 50 (W.D.N.Y. 1987) ("To allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this.... Given the remedial nature of the FDCPA and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of by the target of the very legislation under which a FDCPA plaintiff states a cause of action.") (internal quotation marks omitted); Randall v. Nelson & Kennard, No. CV-09-387-PHX-LOA, 2009 WL 2710141, at *6 (D. Ariz. Aug. 26, 2009) (collecting cases that decline to exercise supplemental jurisdiction over counterclaims in FDCPA actions on "strong public policy grounds"). Beyond the FDCPA, in the context of the Truth in Lending Act, as another example, the Fourth Circuit has cautioned that "[t]o let the lender use the federal proceedings as an opportunity to pursue private claims against the borrower would impede expeditious enforcement of the federal penalty and involve the district courts in debt collection matters having no federal significance." Whigham v. Beneficial Fin. Co. of Fayetteville, Inc., 599 F.2d 1322, 1324 (4th Cir. 1979).
The same concerns apply to the TCPA. Ginwright, 2016 WL 5867443, at *5. The TCPA is a remedial statute meant to protect consumers from certain telephone calls "thought to be an invasion of consumer privacy and even a risk to public safety." Riazi, 2017 WL 4260847 at *6 (citing In re Rules and Regulations Implementing the TCPA of 1991, 18 F.C.C.R. 14010, 14018 (July 3, 2003) ). These include debt collection calls to cell phones. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 F.C.C.R. 1830, 1834 (2012) (exempting debt collection calls to landlines, but not to cellphones, from coverage of TCPA); (Doc. No. 59 at 10-11) (collecting cases recognizing damages under the TCPA from debt collection calls or texts to cell phones). Further, because the TCPA is a remedial statute, it should be liberally construed in favor of the consumer. Mey v. Venture Data, LLC, 245 F.Supp.3d 771, 775 (N.D.W.Va. 2017). "Permitting the collection of an underlying debt by way of a counterclaim in a plaintiff's federal TCPA action creates the risk of a chilling effect on ... bringing a TCPA action." Riazi, 2017 WL 4260847 at *6 (citation omitted). Thus, "[t]he Court's exercise of supplemental jurisdiction over [Ally's] Counterclaim would likely frustrate the federal policy of deterring automated telephone calls embodied within the TCPA. Specifically, if the Court were to exercise supplemental jurisdiction over counterclaims for collection of the underlying debt involved in TCPA claims, prospective plaintiffs would potentially be discouraged from bringing forth meritorious TCPA claims for fear of such counterclaims."[4] Watkins, 2015 WL 5178134, at *5.
*825 The Court therefore concludes that asserting supplemental jurisdiction over Ally's fraudulent inducement state law Counterclaim would undermine the remedial purpose of the TCPA and its goal of protecting consumers from unwanted automated calls to cell phones-even for debt collection purposes-that annoy and invade privacy. Accordingly, even if Ally's Counterclaim were to fall within the Court's supplemental jurisdiction, the Court would find that the facts of this matter present "exceptional [public policy] circumstances" justifying a decision to decline to exercise that jurisdiction. See 28 U.S.C. § 1367(c)(4) ; Riazi, 2017 WL 4260847, at *6 ; Graf, 2015 WL 632180, at *6-8.
D. Conclusion
For the foregoing reasons, Plaintiff's Motion to Dismiss the Defendant's Counterclaim (Doc. No. 73) is GRANTED .
IT IS SO ORDERED.

Despite some briefing on this subject, in this Circuit the Court's analysis no longer turns upon the identification of counterclaims as "compulsory" or "permissive." See, e.g., Edwards v. Equitable Acceptance Corp., No. 1:14-CV-00888, 2015 WL 3607297 at *4 (N.D. Ohio June 8, 2015) (collecting cases).

Ally has not even mentioned this persuasive authority when opposing the pending motion. The Court acknowledges that there are some out-of-circuit district court cases that hold, especially in the context of the FDCPA, that claims and counterclaims for underlying debt do share a common nucleus of facts. See Graf, 2015 WL 632180, at *5 (collecting cases). Even a District Court within this Circuit has so ruled. See Edwards, 2015 WL 3607297. With all due respect, the Court is more persuaded by logic of the authority discussed herein. As for Edwards, it lacks serious analysis and contains only a conclusory statement that "[t]he common factual connection between the claims is the underlying debt and the numerous phone calls placed by [the defendant]." Id. at *4. The Court finds that Edwards does not control here.

There is little practical difference between what Ally has labeled a "fraudulent inducement" Counterclaim and the Counterclaim for "breach of contract" in Ramsey (and other cases) or claim for "breach of settlement agreement" in Salei. First, at times Ally's Counterclaim actually reads more like a breach of contract claim. Second, the causes of action are simply two different ways under state law to redress a perceived slight relative to a contractual agreement for a small purchase. Finally, both fraudulent inducement and breach of contract have clearly identifiable evidentiary requirements under state law.

The amount of Ammons's underlying debt (less than $20,000) may be small compared to the amount of damages she seeks under the TCPA ($1,500 for willful violations of the TCPA, with over 500 alleged unlawful telephone calls), but, as stated by the court in Graf (in the context of an FDCPA action):
[W]hether the amount owed on an underlying debt is significant enough to deter a potential ... plaintiff if [her] debt collector is permitted to assert a claim for the debt, or so "small" that a plaintiff will move forward with his ... action regardless of whether it will provide a federal forum for his debt collector is entirely subjective. Exercising jurisdiction over [the defendant's] counterclaims on the ground that the amount of the alleged underlying debt is minimal in the eyes of [the defendant], or the Court for that matter, plainly undermines the remedial purpose of the FDCPA and its goal of "protect[ing] individuals from unfair debt collection practices regardless of whether the individual actually owes a debt."
2015 WL 632180, at *6 (citations omitted). Indeed, this rationale equally applies to the protections afforded by the TCPA against invasive debt collection calls to cell phones. Riazi, 2017 WL 4260847, at *6 (finding this reasoning "compelling" in the context of a TCPA claim and counterclaim).